UNITED STATES, Appellee

v.

CECIL E. DODD, Private First Class, U. S. Army, Appellant

2 USCMA 94, 6 CMR 94

No. 1044

Decided December 19, 1952

LT. COL. George M. Thorpe, U. S. Army, and 1ST LT. John W. Fuhrman, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Robert A. Forman, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted of larceny by general court-martial in Korea, in violation of Article 121 of the Uniform Code of Military Justice, 50 USC § 715, and of the wrongful sale of military property, in violation of Article 108 of the Code, 50 USC § 702. He was sentenced to dishonorable discharge, total forfeiture of pay and confinement for three years. Army reviewing authorities have upheld the findings and sentence. We granted the accused's petition for review, limited to the question

94

of whether there was sufficient evidence to support the findings.

At about 8:20 p.m. on October 18, 1951, Lieutenant Colonel Leo Santerre parked his jeep outside his office in Inchon, Korea, leaving it unlocked. Santerre described the jeep as a "Government 4x4 quarter-ton vehicle." He added that it was painted an OD color, marked "Headquarters Number 12, 21st TMP," and had a lock and chain fastened to an eye bolt on the left side of the jeep. Santerre remained in his office for approximately one and one-half minutes and then returned to the place where he had parked the jeep. It was not there. He notified the military police and other law enforcement agencies. Approximately five days later, a jeep identified by Colonel Santerre as his was returned to him by the authorities. The jeep had been newly painted, but was otherwise unaltered.

At approximately 6:00 p.m. on the night of October 18, three Koreans—Choe Chan Ho, You Se Youn, and Han Kyung Sun—met in front of the Pyung Wha Construction Company building in Inchon. This building is located some 200 to 250 yards from the place where Colonel Santerre had parked his jeep. The Koreans were waiting for the delivery of a jeep, which You Se Youn was going to buy. At about 7:50 p.m. an American soldier drove up in a jeep. The only description given of this jeep was that it had no top. The three Koreans got in the jeep, and the soldier drove to the house of one Jun Bak Sub. Upon arrival, all occupants got out except Choe Chan Ho, who drove off with the jeep. Choe Chan Ho testified that the purpose of going to Jun Bak Sub's house was to sell the jeep.

At about noon on the following day, Choe Chan Ho, You Se Youn, and two soldiers met at the Inchon Bank Association. The soldiers came, according to the Koreans, "to receive money for the jeep." One of the soldiers was identified as Roy Spencer. Choe Chan Ho identified the accused as the soldier with Spencer, and also "thought" that it was the accused who had driven the jeep on the previous night. You Se Youn stated that the accused "looked like the sol-dier" who came to the bank with Spencer on the 19th. At about 7:00 p.m. on the same evening, the same two soldiers came to Choe Chan Ho's house. You Se Youn was also present. Choe gave 200,000 won to Spencer, who divided the money with the accused.

Based upon these facts—and these facts alone—the accused was convicted of the larceny of a Government vehicle and the wrongful sale of said vehicle. In the specifications, the vehicle was described only as a "truck 1/4 ton 4x4 jeep, of a value of over fifty dollars ($50.00), the property of the United States."

It may be conceded that the Government established in this case that a jeep as described in the specification and belonging to the United States Government was wrongfully taken from the possession of Lieutenant Colonel Santerre on the night of October 18. The only issue in the case is whether there is substantial evidence showing that this jeep was taken by the accused and that the accused was involved in a wrongful sale of the same jeep. The prosecution evidence on these points consists of the following: a jeep driven by someone who looked like the accused picked up some Koreans on the night of October 18 at a place near where the missing jeep was left by its owner (in this connection it is noteworthy that Santerre left his jeep at about 8:20 p.m., whereas the Koreans testified that a jeep arrived at the Construction Company buildings at about 7:50); the Koreans were involved in a transaction wherein "someone was to sell them a jeep"; one of the Koreans took the jeep; on the next day, the accused and another soldier divided 200,000 won, identified as "money for the jeep."

It requires too much emphasis upon minor and equivocal circumstances to conclude from this scanty evidence that the accused took Santerre's jeep and sold it to the Koreans. It may be conceded that there is substantial evidence showing that the accused sold a jeep to the Koreans. However, it is common knowledge that jeeps—even those without tops—are in plentiful supply in Inchon, Korea. Many of these jeeps are

owned by units of Australian, English, South Korean, and other armies; and even, we must suppose, by civilian agencies of South Korea and other countries of the United Nations. For all the record shows, some of these jeeps may have been sold in Korea to private individuals. No effort was made at the trial to identify the jeep turned over to the Koreans as the one taken from Colonel Santerre, nor was there any proof that the jeep later returned to Santerre was obtained from the Koreans.

It is apparent from the specifications and the Government's case that the accused was charged with and tried for the theft and wrongful sale of Santerre's jeep. The only evidence connecting the accused with this theft was the testimony of one Korean that he "thought" it was the accused who drove a jeep on the night Santerre's jeep was taken.

Although the accused was positively identified as the soldier who received half the proceeds from the sale of a jeep, there is no proof that the vehicle involved in the sale was the property of the United States Government—or even that it was an illegal transaction. That it probably was—or, to put it another way, that this record establishes a suspicion of guilt—is not sufficient; there must be substantial evidence of all elements of the crime of larceny, including the elements that specific, identified Government property was wrongfully taken by the accused, and that this property was unlawfully sold. This evidence is lacking.

The decision of the board of review is reversed and the charges and specifications are dismissed.

Judges LATIMER and BROSMAN concur.