UNITED STATES, Appellee

v

RONALD GRIMES, Basic Airman, and PHILLIP D. KNOPP, Basic Airman, U. S. Air Force, Appellants

8 USCMA 568, 25 CMR 72

No. 9898

Decided January 3, 1958

*Captain Norman J. Nelson* argued the cause for Appellants, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb*.

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Robert W. Michels* and *Lieutenant Colonel Francis P. Murray*.

ROBERT E. QUINN, Chief Judge:

The accused were tried in common by a special court-martial for the misappropriation of an Air Force jeep. One of the two issues presented for our review concerns the sufficiency of the evidence to support the findings of guilty.

At the trial it was established that about 9:30 o'clock on the night of October 2, 1956, Staff Sergeant D. L. Burnam parked an Air Force jeep in the Supply Squadron area at Nouasseur Air Depot, Morocco, Africa. The next morning at about 7 o'clock he discovered that the jeep was missing. He reported the loss to the Air Police, and was advised that the vehicle was "outside." He went to the Air Police Squadron parking lot and found the jeep.

To connect the accused with the movement of the vehicle, the prosecution called a number of witnesses. Air Policeman E. P. Clark, who was on patrol duty, testified that about 1:30 a.m. on October 3, he saw the accused drive out of the Depot in a jeep through Gate No. 1. The accused Grimes was driving, and Knopp was "riding." As Grimes passed the gate, he slowed down somewhat, and called out something which the witness did not hear. However, he did not stop, as required, to show a trip ticket for the vehicle and his identification card. Clark called the Air Police office to ascertain if the accused were on duty. He had seen the two about midnight at guard mount and they had appeared to him to be "under the influence of alcohol." Completing his call, Clark set out in pursuit of the accused. He did not catch up with them. Although Clark identified the accused as the persons in the jeep, nowhere in his testimony did he describe the vehicle. Airman R. E. Pritzel, Jr., one of the guards at Gate No. 1, also testified in regard to the incident. He did not get "much of a look"

at the vehicle, and he could not describe it.

Two other Air Policemen testified for the Government. Airman Beers said that he was on duty from 12:30 to 7:00 a.m. on October 3. About 6:30 a.m. he was dispatched by the Air Police Squadron Desk Sergeant to the civilian Central Police Station at Casablanca, to "pick up two Airman [sic] Basics." He was accompanied by an interpreter, and apparently also by Airman First Class Sechrest. Arriving at the station he found the accused. He then drove a jeep, which had been parked "inside" the Central Police parking area, "back to Nouasseur." He did not know how the jeep had gotten to Central Police Station. Neither did he know why the civilian police had taken the accused into custody. As far as he knew they "could have been picked up for anything."

Airman First Class T. R. Sechrest testified that he was "patrol stand-by in the office." He was in the office when a report came in from the Main Gate. The desk sergeant called the French police "for a pick-up on an American jeep and them two airmen [the accused]."[1] Sechrest was "ordered to go out and look for a jeep with two airmen" and he was "told . . . the last three numbers of the jeep." At an undisclosed time, he was also in the office when a call came in from the civilian police at Casablanca advising that "they had apprehended two Americans" and they wanted a patrol to pick them up. He proceeded to the Central Police Station. Through his interpreter he was told by the French Police, "Here are the two men that they picked up with the jeep."[2] He found the accused "in one of the offices." He also found "an American style jeep" at the station. The "last three numbers of the jeep" corresponded with the numbers which had been previously given to him. He returned with the jeep to Air Police

---

[1] Defense counsel objected to this testimony on the ground of hearsay. No ruling was made on the objection.

[2] Here again defense counsel objected to the testimony on the ground of hearsay. Again, there was no ruling on the objection.

Headquarters. Finally, Airman Sechrest testified that he had no knowledge of a report of a "stolen" jeep unless "you want to class that [the report that an Airman had "run the gate"] as a stolen jeep."

A substantial question is raised by the failure of the president of the special court-martial to rule on the several objections by defense counsel to Airman Sechrest's testimony. However, we can pass this matter to reach the core of our problem, namely, does the evidence establish a connection between the accused and Sergeant Burnam's jeep? The testimony of three of the five Government witnesses does not remotely show such connection. Burnam testified only to the absence of his jeep from the place where he had parked it and its recovery the next morning at the Air Police Squadron Parking lot. Clark and Pritzel offered nothing more than the fact that they saw the accused in a jeep. Clark did not describe the vehicle, and Pritzel affirmatively stated that he could not do so. Airman Beers testified that he picked up the accused and a jeep at the civilian Central Police Station and returned them to the Air Depot, but nothing in his testimony links the accused even with the jeep that he obtained at the Central Station. As he testified, so far as he knew the accused "could have been picked up for anything." Consequently, the findings of guilty must find their support in Airman Sechrest's testimony.

The loose way in which Airman Sechrest was examined makes it difficult to establish the chronology of his testimony. However, it is significant that he testified he had no knowledge of any report of a "stolen" jeep. This testimony accords with Airman Beer's statement that he, an interpreter, and apparently Sechrest, left the Air Depot for the Central Police Station at about 6:30 a.m. and Sergeant Burnam's testimony that he reported the loss of his jeep to the Air Police at about 7:00 a.m. It appears, therefore, that Sechrest's testimony that he was informed of the last three digits of the number on the jeep driven by the accused is unrelated to the possible inference that

Burnam identified his jeep by number when he reported its loss. Since Clark's testimony does not suggest identification of the accused's jeep by number, it is also doubtful whether the evidence supports the inference that the number given to Sechrest came from the report from the Main Gate. However, assuming the validity of the inference that the report provided the "last three" digits of the identification number of the accused's jeep, Sechrest's subsequent identification of that jeep at the Central Police Station does not establish any link between that jeep and the one purportedly taken from Sergeant Burnam.

Two other circumstances emphasize the gap in identification. First, not one witness testified to even a single point of similarity between the two. True, Sergeant Burnam testified that he identified the jeep he recovered at the Air Police Squadron parking lot as his by checking the number on his trip ticket against the number on the jeep. He thought that the last four digits "were 6913" but he would not "swear to it." He also recognized it "by the two doors in the back" of the vehicle. Sechrest also identified the jeep he obtained at the civilian police by number; but he did not give the number, and his testimony excludes any inference that he had any information as to the number on Burnam's jeep. Neither, therefore, connects the identifying number on Burnam's jeep with that on the accused's. Second, there is no evidence to show that the jeep brought from the Central Police Station was the one claimed by Sergeant Burnam. Sergeant Burnam testified that he picked up his jeep from the Air Police Squadron parking lot on the morning of October 3, 1956. The evidence does not show that the accused's vehicle was parked in that place. Although Sechrest testified that he returned "with" the jeep to Air Police Headquarters, it was Airman Beers who drove the jeep from "the Police Station back to Nouasseur," and he did not say where he parked the vehicle. He did not look at the number of the jeep, and he did not know whether it "had been reported stolen."

To establish the offense charged, the

Government was required to prove "that *specific, identified* Government property was wrongfully taken by the accused." (Emphasis supplied.) United States v Dodd, 2 USCMA 94, 96, 6 CMR 94. Summarized, the evidence shows only the following: (1) That a jeep assigned to Sergeant Burnam was parked in the Supply Area of the Nouasseur Air Depot at about 9:30 p.m. and was found the next morning, at an unspecified time, in the parking lot of the Air Police Squadron; (2) that about 1:30 a.m. on October 3, the accused drove through the Main Gate of the depot in a jeep, and at sometime after 6:30 a.m. they were taken into custody at the civilian Police Station at Casablanca and returned, with the jeep, to the Air Depot. No connection is established between these two incidents. As a result, there are "fatal gaps in the evidence" of identity between the jeep taken from Burnam and the jeep driven by the accused. United States v Duffy, 3 USCMA 20, 22, 11 CMR 20; United States v Dodd, supra. The Government, therefore, failed to prove the charge.

In view of our conclusion that the evidence is insufficient to support the findings of guilty, we need not consider the second matter on which we granted review. The decision of the board of review is reversed. The findings of guilty and the sentence are set aside and the charge is ordered dismissed.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

Evaluating the record by using the rule applicable in circumstantial evidence cases, I find that the Government has proved sufficient facts to support a finding of guilty beyond a reasonable doubt. United States v McCrary, 1 USCMA 1, 1 CMR 1.

I would affirm the decision of the board of review.