UNITED STATES, Appellee

v.

CHARLES F. DUFFY, Private First Class, U. S. Army, Appellant

3 USCMA 20, 11 CMR 20

No. 1404

Decided July 3, 1953

Col M. W. Ludington, U. S. Army, Lt Col George M. Thorpe, U. S. Army, and 1st Lt John W. Fuhrman, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, and 1st Lt Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

A general court-martial convened at Chunchon, Korea, convicted the accused, Duffy, of the larceny of two truck tires, in violation of the Uniform Code of Military Justice, Article 121, 50 USC § 715. The findings and sentence were approved by the convening authority and affirmed by a board of review without opinion. Thereafter, this Court granted accused's petition for review, limited to two questions:

"1. Whether the evidence is sufficient to support the finding of guilty.

"2. Whether the action of the convening authority was correct."

II

With regard to the question of sufficiency, we should note first what *was* established at the trial of direct relevance here. At about noon on the day in question, the accused drove a weapons carrier to his organization's "tire shop." He there acquired some weapons of an undisclosed nature and two radiators. Some fifteen minutes later a Corporal Burrell, who was in charge of the facility, left to take his lunch, leaving unattended in the shop the accused, together with two unidentified Korean nationals. At approximately 12:45 o'clock, Burrell was notified that two tires had been taken from the shop. Upon checking his inventory, the truth of the report was verified. The accused was not then in the area, but returned with his weapons carrier to the motor pool at about that time, or shortly thereafter. Following his return, accused was questioned by a commissioned officer and a warrant officer. What was developed during this interrogation was not brought out at the trial, for the reason that it was not shown that accused had been warned of his rights, as required by Article 31

**21**

of the Code, supra, 50 USC § 602. However, the accused and one Sergeant Sutton held a conversation of an undisclosed character, as a result of which they—accused and the Sergeant—proceeded by car to a Korean house in Chunchon. Sutton remained in the vehicle, while accused entered the house and returned shortly with two tires, which were identified subsequently as those missing from the "tire shop." Slightly more than an hour had elapsed from the time of the report of the theft. On the basis of this evidence, both the Corps Staff Judge Advocate and one of his assistants recommended dismissal of the charge for evidential insufficiency. The convening authority—as we shall shortly see—rejected their recommendation.

There is no doubt that the evidence recited above directs the finger of suspicion at the accused. Mere suspicion, however, is not a foundation sufficient for the support of a criminal conviction. There are fatal gaps in the evidence relied on by the prosecution in this case. When were the tires taken? Were they taken while the accused was in the shop? Did not the two Koreans have as great an opportunity—and perhaps a more compelling motive—to take the property? What and who were the moving forces behind the trip to the Korean house? Who dwelt in the house? With the presumption of innocence ever weighing in favor of an accused person, "suspicion, conjecture, and speculation cannot form the basis for fact-finding action." United States v. Peterson (No. 199), 1 USCMA 317, 3 CMR 51, decided April 17, 1952. A conclusion of this accused's guilt on the evidence introduced against him can only have been the result of naked speculation and conjecture. The resulting conviction must, therefore, be set aside for insufficient evidence and the charges must be dismissed.

### III

Before acting on a record of trial, a convening authority is required to refer the document to his staff judge advocate or legal officer for review. Manual for Courts-Martial, United States, 1951, paragraph 85a. The reviewing officer, in turn, is required to submit a written review, summarizing the evidence, rendering an opinion on the sufficiency thereof and the presence and effect of error in the record, and concluding with a specific recommendation of action thereon. Manual, supra, paragraph 85b. With respect to the possibility of disagreement between the convening authority and his official legal advisor, paragraph 85c of the Manual, supra, provides:

"Ordinarily, the convening authority should accept the opinion of his staff judge advocate or legal officer as to the effect of any error or irregularity respecting the proceedings, as to the adequacy of the evidence, and as to what sentence can legally be approved. However, it is within the particular province of the convening authority to weigh evidence, judge the credibility of witnesses, determine controverted questions of fact that may have been raised in the record, and to determine what legal sentence should be approved. In those unusual cases in which a convening authority is in disagreement with his staff judge advocate or legal officer as to the effect of any error or irregularity respecting the proceedings, as to the adequacy of the evidence, or as to what sentence can legally be approved, the convening authority may transmit the record of trial, with an expression of his own views and the opinion of his staff judge advocate or legal officer, to the Judge Advocate General of the armed force concerned for advice. In any case which is forwarded to the Judge Advocate General, if the convening authority takes an action different from that recommended by his staff judge advocate or legal officer, he should state the reasons for his action in a letter transmitting the record to the Judge Advocate General (91a)."

Thus it is contemplated that a convening authority will follow the advice of his legal reviewer, *save in the unusual and extraordinary case.*

As noted above, both an Assistant

Staff Judge Advocate, and his immediate superior, the Corps ■ Judge Advocate, recommended to the convening authority here disapproval of the findings and sentence for insufficient evidence and dismissal of the charges. That officer, however, declined to follow these recommendations and approved the findings and sentence. In his letter of explanation to The Judge Advocate General, United States Army —as required by paragraph 85c of the Manual, supra—the convening authority said:

"*The accused had previously confessed to the commission of the crime,* but, because of a technical failure to fully comply with the requirements of Article 31, UCMJ, the confession was not admissible in evidence. Therefore, because of the departure of some key military witnesses due to rotation before the case was referred to this headquarters, and the subsequent disappearance of the Korean civilian witnesses, the prosecution was forced to rely largely on circumstantial evidence. Notwithstanding the fact that I have full and complete confidence in my Staff Judge Advocate and in the soundness of his professional opinion and advice, *I am loath to permit a man whose guilt is plain to me to escape his just punishment because of a technicality.* The offense of which the accused was found guilty is one of a type that has been, and continues to be, a most serious problem in Korea. Theft of valuable government property on a large scale and the sale of it to black marketeers has been rife. Vigorous and stringent measures are necessary to stamp out the practice. Therefore, I desire to give my full support to the finding of guilty and the sentence given by the General Court-Martial." [Emphasis supplied].

Now, the basis for the action of the convening authority in this case, as reflected in his letter to The Judge Advocate General, was his view that an apparent confession of the accused had not been admitted in evidence at the trial because of a "technicality"—the "technicality" assuming the form of failure on the part of investigative personnel to warn the accused of his rights, as required by Article 31 of the Code, supra. We have made it clear that the obligation to warn under these circumstances is no mere "technicality." United States v. Wilson and Harvey (No. 647), 2 USCMA 248, 8 CMR 48, decided February 27, 1953; United States v. Williams (No. 1212), 2 USCMA 430, 9 CMR 60, decided May 1, 1953. That this is true is nowhere made more apparent than in Article 31(d) of the Uniform Code, itself. 50 USC § 602(d). Convening authorities are not free to brush aside substantial rights secured by mandate of Congress.

By his utilization of "evidence" outside the record in affirming the conviction of the accused, the convening authority unwarrantedly deprived the accused of the review guaranteed him by the Code and Manual. Uniform Code, supra, Articles 61, 64, 50 USC §§ 648, 651; Manual, supra, paragraphs 84, 85. ■ Without hesitation, we say that the right of an accused to a review confined to the record adduced at his trial is safely within the guaranty of military due process of law. United States v. Clay (No. 49), 1 USCMA 74, 1 CMR 74, decided November 27, 1951; United States v. Burns (No. 847), 2 USCMA 400, 9 CMR 30, decided April 15, 1953. We cannot conceive of a concept more repugnant to elementary justice than one which would permit appellate reviewing authorities to cast beyond the limits of the record for "evidence" with which to sustain a conviction. It would not be tolerated in the civilian community for a single moment, and, so long as this Court sits, it will not be tolerated in the military. While we are not without understanding and sympathy for the vigorous reaction of the convening authority as a man, it must not be forgotten that he acted on the record of this trial as an official of the United States. His conduct as such an official was not only unlawful; it was lawless. It struck at the very heart of the Uniform Code and the current dis-

pensation of military justice, and it cannot be condoned.

We have not overlooked the difficulty in this case—adverted to by the convening authority—in obtaining the presence of witnesses. Certain military personnel had been rotated, and Korean civilians had disappeared. However, we also note that, although the offense charged was allegedly committed in January, 1952, the trial was not held until May, almost four months later. The mentioned difficulties in proof may, therefore, have been due—at least in part—to procrastination on the part of the Government. Moreover, we must point out that it is ever open to the prosecution, faced with a delay in trial, to obtain the testimony of prospective witnesses by use of depositions taken in accordance with the provisions of Article 49 of the Code, supra, 50 USC § 624, and paragraph 117 of the Manual, supra. Finally, it cannot be gainsaid, if the explanatory letter is accurate, that the inadmissibility of an offered confession at the trial below was due to failure to observe and obey a Code mandate on the part of military law enforcement personnel—presumably members of the command of the convening authority himself.

## IV

Before terminating this opinion, we must advert to a single further matter. The board of review, in affirming the conviction and sentence in this case wrote no opinion. We cannot possibly understand how its members could let pass unnoticed the action of the convening authority here. Effective, sound, full and fair appellate review—that enjoined by the Uniform Code of Military Justice—demands closer attention than appears to have been afforded this case by the board. We are sure that had its members observed the letter of the convening authority, they would not have omitted reference to it.

For the reason set forth in part II of this opinion, the decision of the board of review is reversed, the conviction is set aside, and the charges are dismissed.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I concur in that portion of the opinion which holds the evidence is insufficient to support the findings of guilt. The Government seeks to sustain them by relying on the rule stated in the Manual to the effect that proof of possession of recently stolen property, not satisfactorily explained, raises a presumption that the possessor stole it. I do not question the rule but there is no evidence to justify its application. Possession as contemplated in that doctrine is something more than knowledge of where the property is secreted. The record shows that the accused went to the place where the tires were located but this does not complete the chain of circumstances. Without some evidence as to who owned, controlled or had the right to occupy the particular premises involved, it is impossible to determine who actually was in possession of the stolen property. When the foundation for the presumption crumbles both fall. Furthermore, as stated in the Court's opinion, there are no other facts and circumstances from which it can be inferred reasonably that the accused was the offender.

I do not join with the Court in all that it states about the convening authority. I believe we should go no further than to hold he erred to the prejudice of the accused when he considered evidence on the merits which was not admitted in evidence. In this instance, had he merely stated that he disagreed with his staff judge advocate because he believed the evidence sufficient to support the findings he would have escaped criticism. Because he set out his reasons candidly and fully so they could be evaluated by reviewing authorities he is censored. If by being unnecessarily critical we deter convening authorities from setting out their reasons, be they legal or illegal, we have not helped the system.