UNITED STATES, Appellee

v.

CLARENCE BROWN, JR., Private First Class, U. S. Army, Appellant

3 USCMA 242, 11 CMR 242

No. 2269

Decided August 21, 1953

LT COL James C. Hamilton, U. S. Army, CAPT William C. Irby, Jr., U. S. Army, and 1ST LT Thomas E. Cole, U. S. Army, for Appellant.

LT COL William A. Ward, U. S. Army, LT COL Thayer Chapman, U. S. Army, and 1ST LT Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This accused, Brown, was convicted by a general court-martial convened in Korea of the larceny of a quantity of motor oil, property of the United States, as well as of a wrongful sale of the same oil—violations, respectively, of Articles 121 and 108, Uniform Code of Military Justice, 50 USC §§ 715, 702. The convictions have been approved by the convening authority and affirmed by a board of review in the office of The Judge Advocate General, United States Army. On petition of the accused, further appellate review by this Court was granted to consider two questions:

"1. Whether the evidence is sufficient to support the findings of guilty.

"2. Whether the law officer's instruction that 'the evidence shows that it was with the intent to permanently deprive the United States of the property' was proper."

II

Decision of the first question requires an extensive recital of the evidence reflected in the record. The Government introduced four witnesses. The first, Sergeant John W. Owens, testified that at the time of the alleged offense, March 1952, the accused was a member of the 506th Quartermaster Petroleum Supply Company, the duties of which unit involved the receipt, issuance and storage of "POL products," namely, gasoline, oil, and grease. Oil, this witness said, was ordinarily received in fifty-three gallon drums and in five gallon tins.

The second witness was a Korean national named Chu Won Kyo. He related, insofar as here pertinent, that he was employed by the accused's organization in March 1952; that he knew most of the American soldiers attached to the company; that he was acquainted with the accused; that accused asked him if he could dispose of a quantity of oil, to which he responded in the affirmative; that thereafter he "talked to Mister Jun [a friend of his] and went out to find someone to buy oil"; that he did not know whether any oil was sold; and, finally, that he later received 100,000 won from Jun.

The prosecution's third witness was the "Mister Jun" referred to by Chu. Jun Soo Yon, also a Korean national, testified that he also had been in the employ of accused's unit in March 1952;

that he was asked by Chu to obtain a vehicle to transport oil; that a vehicle was acquired from a "Mister Chul," who found a buyer for oil; that subsequently he saw the vehicle, a United States Army truck belonging to the Korean Army, parked in the area of the company involved, but could not tell whether it was loaded because it was covered with canvas; and that he did not know that any amount of oil was stolen at the time in question. The witness went on to say that "Mr. Chul" gave to him and to Chu Won Kyo 100,000 won each, and later turned over to him an additional 1,820,000 won. The latter sum he paid over to a soldier who came to his door at night. He could not identify this soldier. It should be noted that the witness also stated that on no occasion had he talked with the accused on the subject of oil, and that he gave accused's name to investigating officers because he had been beaten. He explained that accused's name had come to his mind in this connection only because Chu Won Kyo had told him accused was suspected, and, presumably, because he felt that it was necessary to satisfy his inquisitors in some manner.

The final Government witness was an agent of the 51st Criminal Investigation Division. His appearance served only to lay a foundation for the introduction in evidence of a statement secured by him from the accused.

The evidentiary picture is completed by the statement of the accused. This was admitted in evidence by the law officer over the objection of defense counsel that there had been no proof of a corpus delicti. In substance, the brief statement comes to this. As he was returning from the noon meal one day about the middle of March 1952, the accused observed a Korean truck, loaded with approximately 150 five-gallon oil cans, leaving the compound. Inquiry of an office clerk revealed that no "issue slip" had been furnished the driver of the truck. Subsequent questioning of Korean laborers present in the compound led him to Jun. Further examination of Jun by the accused demonstrated that the latter was frightened. He pleaded with accused not to report the incident, and asked him to

244

call at his house that night. Accused went to the house where he was given 1,700,000 won. Finally, accused freely admitted that he understood that it was his duty to report the Korean truck incident to his superiors.

## III

Patently, there is much to be said concerning the weaknesses of the prosecution's case. However, it is not necessary that we pass on the question of whether a corpus delicti was established. The evidence here, including accused's statement, is considerably less substantial than that presented in United States v. Duffy (No. 1404), 3 USCMA 20, 11 CMR 20, decided July 3, 1953, where a united Court reversed for insufficiency as a matter of law. In this case, there is literally no evidence that oil was ever taken illegally. Accused observed a truck loaded with oil cans, but there is no showing whatever that these cans in fact contained oil—or, in truth, anything. Furthermore, assuming that there was oil in the containers, there is no showing that they or it had been the subject of theft. The case before us is clearly distinguishable from United States v. Evans (No. 143), 1 USCMA 207, 2 CMR 113, decided March 10, 1952. Numerous other failings might well be adverted to—but such a course could serve no useful purpose. On the basis of the record as presented to this Court, a conclusion that the accused stole and sold a quantity of oil, as alleged, could only be the product of unadulterated speculation. Manifestly, such a record is insufficient as a matter of law to support a conviction of guilt of these offenses. United States v. O'Neal (No. 25), 1 USCMA 138, 2 CMR 44, decided February 7, 1952; United States v. Peterson (No. 199), 1 USCMA 317, 3 CMR 51, decided April 17, 1952; United States v. Duffy, supra. This is not to say that the accused may not have been guilty of some other offense—a matter on which we express no opinion.

Accordingly, the convictions are reversed and the charges dismissed. In view of this disposition, it is unnecessary that we consider the second question raised.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

I disagree with the conclusion reached by the majority that the evidence fails to show that the accused stole and sold the oil as alleged. The Manual provides that the offense of larceny may be proved by showing (1) a wrongful taking or withholding of the property, (2) its ownership, (3) value, and (4) an intent permanently to deprive another of its use and benefit. Paragraph 200a, page 361, Manual for Courts-Martial, United States, 1951. Concerning element (1), above, it is further provided that he is guilty of the offense if he "wrongfully takes . . . , *by any means whatever.*" (Emphasis supplied.) Paragraph 200a, page 356, Manual for Courts-Martial, supra.

The record fails to show an actual asportation by the accused, personally, but it is sufficient to show a wrongful taking accomplished by others acting at his instigation. Under such circumstances the accused may be held responsible. The general rule appears to be that where a person procures a guilty agent to take the goods in his absence he is as guilty of the larceny as the one who takes them with his own hands. 32 American Jurisprudence, Larceny, § 14, page 899.

Applying that rule to the case at bar, I conclude the evidence is sufficient to permit the court-martial to find the accused guilty. The record shows that the accused was on duty with the 506th Quartermaster Petroleum Supply Company, located in Korea. Chu Won Kyo, hereinafter called Chu, and Jun Soo Yon, identified later as Jun, two Korean Nationals, were employed by the company. The function of the company was to receive, issue, and store oil, gas, and grease belonging to the military service of the United States. Normally, issue slips were prepared for each load of petroleum products leaving the premises, and these were checked by a guard on duty at the gate. However, during the noon lunch period from 11:30 a.m. to 1:00 p.m., no one was on duty at that post. Chu testified that in mid-March 1952, the accused approached him and asked if he could sell some oil; that Chu talked the matter over with Jun; that the latter agreed to find some one who would buy oil; and that Chu subsequently received the sum of 100,000 won from Jun. Jun testified that in the middle of March he had a conversation with Chu; during this conversation he was asked to get a vehicle to transport oil; that through one Chul, he obtained the use of a truck which belonged to the Korean army; that he directed that the truck be driven to the 506th Quartermaster Supply Company and there pick up some oil; that he understood the oil was to be sold; that later he received 1,820,000 won from Chul, in addition to 100,000 won each for himself and Chu; that the 1,820,000 won was payment for "goods" and that he took it to his home; that a colored soldier visited his home that night and stated that he had come "to get the money for oil," and, that he gave the soldier the money.

A pretrial statement, which was signed by the accused and received in evidence, is as follows:

"About 1215 hours, sometime during the middle of the month of March 1952, as I was returning to duty from chow, at the 506 QM Main Petroleum Supply Dump, at Yong Dung Po, I observed a Korean army truck leaving the Number 1 Gate of the compound. This truck was loaded with five gallon cans of motor oil, which appeared to me to be about one-hundred and fifty cans. I inquired of the clerk in the office, at this time, if he had given an issue slip to the Korean driver of the truck and he stated that he had not. I then went into the compound and inquired of the Korean laborers and they pointed to JUN, the Korean labor foreman. I questioned JUN regarding the Korean truck load of oil and he appeared frightened and pleaded with me not to report the incident to the Lieutenant in charge of the dump and that the Korean was a friend of his. He also told me to come to his home that night. About 1930 hours that evening I went to JUN's house and he gave me 1,700,000 won."

In summary, I find the record contains these facts and circumstances from which the court-martial could find that the accused misappropriated and sold Government property. Pursuant to a previously arranged scheme conceived and instigated by the accused, a truck obtained by Jun appeared at the gate of the 506th Quartermaster Petroleum Supply Company at a time when no guard was on duty. The only property normally handled by that company was petroleum supplies and its principal function was to receive, issue and store them. The accused saw the truck leaving the gate of the compound loaded with what he identified as 150 "five-gallon cans of motor oil." He worked in the company and could identify oil cans. Normal procedure required that when supplies were being transported to other units an issue slip be prepared. The accused inquired of the clerk in the office as to whether that procedure had been followed. Of course, if there was no oil there would be no necessity for an issue slip. Having been informed that no slip had been issued thereon, accused then made success of his plan possible by failing to report the incident to the officer-in-charge as proper procedure required him to do. Instead, he sought out Jun, the Korean with whom arrangements for the theft and sale of the oil had been made, and discussed with him the Korean truckload of oil. Later that night accused went to Jun's house where payment for the oil was turned over to him.

I need not concern myself with the possibility of the accused being guilty of some other offense. If a member of a Quartermaster company in Korea can conceive a plan to sell enough oil that he needs a truck to haul it away, execute it through Korean labors, see the truck departing from the company area loaded with oil cans, conceal the theft from his superiors, appear at the proper place and at the proper time to receive payment and then not be guilty of larceny, I misunderstand the effect of circumstantial evidence. Common sense seems to say the plan was not conceived, the truck obtained, the articles transported at a time when a guard would not intercept the truck, the goods obtained from a company which only deals in oil, gasoline and greases, a Korean berated, a substantial sum of money paid and the circumstances timed so nicely, all for naught. It may be a reasonable hypothesis that the participants were playing with empty cases, but I register my doubts. To me the record speaks out quite clearly that the boys were appropriating and selling oil that belonged to the Government.