UNITED STATES, Appellee

v

DONALD FLETCHER JOHNSON, Private,
U. S. Marine Corps, Appellant

9 USCMA 178, 25 CMR 440

No. 10,486

Decided April 18, 1958

*Commander David Bolton,* USN, argued the cause for Appellant, Accused.

*Major Charles R. Larouche,* USMC, argued the cause for Appellee, United States. With him on the brief was *First Lieutenant Daniel P. Reardon, Jr.,* USMCR.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

A special court-martial found the accused guilty under a specification alleging that he had violated Article 113, Uniform Code of Military Justice, 10 USC § 913, by sleeping on his post as a sentinel. Following this finding and a consideration of two prior convictions, the court sentenced him to receive a bad-conduct discharge, to forfeit $55 per month for six months, and to be confined for a like period of time. The findings and sentence were approved by the convening authority, but the officer exercising general court-martial jurisdiction limited the forfeitures and confinement to a period of three months. A board of review in the office of The Judge Advocate General of the Navy affirmed only the forfeitures and confinement, and we granted review to consider two asserted errors in the trial proceedings.

There were no lawyers detailed to the court and, as usual, we find a number of minor irregularities. The first one of importance occurred early in the proceedings. At the commencement of the hearing, trial counsel asked for permission to cite certain authorities to the court. He thereupon read an extensive definition of reasonable doubt from Black's Law Dictionary, Third Edition. He followed this up by reading the headnotes from United States v Williams, 4 USCMA 69, 15 CMR 69, an unrelated case but one where the charge arose out of a sentinel sleeping on post.

The second error of which we take cognizance is alleged to have occurred

**179**

when there was admitted into evidence a log entry in the guard report book showing that the officer of the guard had found the accused fast asleep in a truck and had relieved him from duty.

In considering the first error, we note that trial counsel relied on paragraph 44g(2) of the Manual for Courts-Martial, United States, 1951, which authorizes counsel to read authoritative precedents to the court. On previous occasions, we have expressed doubts about the propriety of that practice. Under certain circumstances, when questions of law are required to be presented to the court, it might be an appropriate way to enlighten the members of the legal issues, but for the most part it leads to confusion and is an undesirable method of proceeding. Particularly is that true if factual comparisons are necessary. In this instance, for reasons which will hereinafter more fully appear, we do not develop fully the principles which cause us to frown on the practice, but we do call attention to the caveat we issued in United States v Fair, 2 USCMA 521, 10 CMR 19.

The arguments touching on the second error revolve around the conclusion entered in the log report that the accused was fast asleep. We believe the principles underlying the general rule of limitations on conclusion in official documents set forth in paragraph 144d of the Manual casts light on this issue. That paragraph provides:

"Official records are admissible in evidence only insofar as they relate to a 'fact or event,' and the admissibility of business entries is limited to a memorandum or record of 'any act, transaction, occurrence, or event' appearing therein. Records or entries of 'opinion' are not admissible under either exception to the hearsay rule. The word 'event' may be considered to include the words 'act,' 'transaction,' and 'occurrence,' and to be included within the meaning of the word 'fact.' Properly speaking, a statement of opinion cannot be considered a statement of fact, for an opinion is an impression upon the mind brought about by an accumulation of facts, whereas a fact is a phenomenon or event by which the human senses are directly activated without the intervention of conscious mental deliberation. Nevertheless, it is often difficult as a practical matter to draw the line between what is opinion and what is fact, and some assertions based on trained observation which, strictly speaking, might be considered statements of opinion so closely approximate statements of fact as to permit the law to place them in the latter category rather than in the former and to admit a record of them in evidence without appreciable risk of doing an injustice because of lack of opportunity to cross-examine."

It may well be that an opinion entry which states a sentry was asleep so closely approximates a statement of fact as to permit its use in an official document, but that is a matter we need not decide in this case, for here the reason underlying the rule fails. Section 1631, Wigmore, Evidence, 3d ed, discusses the reason and states:

"The principle of Necessity, which in one form or another is found in all the Hearsay exceptions (ante, § 1421), is satisfied in the foregoing exceptions by the impossibility of obtaining testimony in court from the same person; i. e. death, absence, insanity, or other like circumstance, has made it impossible to obtain the person's testimony now on the stand. But in the present and ensuing exceptions, this rigorous application of the principle of necessity is found relaxed. Something less than an absolute impossibility is regarded as sufficient. The necessity reduces itself to a high degree of expediency. In none of these exceptions is it required that the witness be shown to be *unavailable by reason of death, absence,* or the like circumstances."

In this instance the offense was committed on February 9, 1957, the entry was made the same day, and the trial was held nine days thereafter. The

**180**

officer who made the entry appeared as a witness, testified to the facts, and was cross-examined by the defense. It was therefore unnecessary to use the document but, at the same time, there was no substantial prejudice for the privilege to cross-examine was available and used. It can of course be argued that, in a limited way, the entry strengthened the officer's testimony but, had his testimony been weakened, which it was not, the entry would also have been depreciated.

We would be more concerned about the asserted errors and their impact on the court if it were not for the quantity and quality of the evidence in this case. When measured by any standard, it is of such a nature that the questionable evidence and the reading of the headnotes could not possibly have any impact on the court-martial. Two witnesses with no apparent reason for falsifying told a consistent and straightforward story of the incident. Their testimony was in no way discredited or weakened, and every fact is conceded except that accused was in a truck asleep. He was posted and assumed the duties of a sentry, and we are convinced no reasonable man would find he was performing his duties at the time in question. The prosecution witnesses established that they reconnoitered the area by car, and when they could not find the accused they dismounted and continued the search on foot. The sergeant first noticed the accused in the truck, and he alerted the officer of the guard. Together they approached the vehicle in an ordinary manner. The sergeant went on one side of the truck and the lieutenant on the other. The officer opened the door, and the sergeant stepped up on the running board. The accused was lying across the seat with his left foot on the deck and his right foot on the seat. His helmet liner and rifle were on the deck of the cab. The officer in a normal tone of voice directed the sergeant to awaken the accused. The sergeant left his position, proceeded to the other side of the cab, reached in and took the accused's helmet liner. It was then that the accused first moved, but prior to that time the officer had noticed the heavy breathing which he described as similar to snoring and twice poked the accused on the knee without response. When he did move, the accused rubbed his eyes and acted as a person aroused from a slumber. The accused did not testify, but a third person testified that he conversed with the accused at 4:00 p.m. and at that time the accused was walking on post. We can accept that testimony as true, for the witnesses were using approximate times and the accused could have left his post and been asleep in short order. With the evidence in that posture, we have no hesitation in finding that the irregularities mentioned were harmless.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

The critical issue for the court-martial's determination was whether or not the accused as a sentinel was sleeping on his post. A log entry introduced by the prosecution without objection reflected that the Officer of the Day had found the accused "fast asleep in the cab of one of the trucks." In my view this entry was no more than a statement of opinion and inadmissible under the hearsay rule. Paragraph 144d, Manual for Courts-Martial, United States, 1951. I would not permit a gradual chipping away of this firmly established rule of evidence merely because a more expedient method of proving an offense is presented.

Additionally, I took with misgivings at the practice permitting trial counsel to read legal authorities to the court-martial in opening argument before any evidence has been presented. Any authoritative source of legal precedent should come from the president. Counsel in this special court-martial were nonlawyers and accordingly the doctrine of waiver is inapplicable. The combined errors in this case are sufficiently prejudicial to warrant reversal of the conviction.