UNITED STATES, Appellee

v

JESSE G. HICKS, Private First Class,
U. S. Army, Appellant

10 USCMA 19, 27 CMR 93

*First Lieutenant James G. Garner* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig*.

*First Lieutenant Paul R. Walsh* argued the cause for Appellee, United States. With him on the brief were *Major Thomas J. Nichols*, and *First Lieutenant Thomas M. Lofton*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused petitioned this Court to review his conviction for causing the death of Michael Rodrigue and Geraldine Fernandez, in an automobile accident, in violation of Article 119, Uniform Code of Military Justice, 10 USC § 919. He contends the evidence is insufficient to show beyond a reasonable doubt that he was the driver of the vehicle at the time of the accident. See United States v Waluski, 6 USCMA 724, 21 CMR 46.

Shortly after midnight, October 4–5, 1957, several persons in the vicinity of the intersection of Stanley and Wilson Roads, Fort Sam Houston, Texas, heard a loud "screeching of tires." At that point Stanley Road describes a long curve to the left for vehicles coming down the road from a northerly direction on the right side. A few minutes later they observed an automobile smashed into a lamppost past the intersection, and three bodies on the ground. One was on the grass off the road about twenty feet north of the car. This was the accused. He was alive. Subsequent examination showed he had a fractured shoulder bone and was slightly bruised on the right side of the face and body. The second body was that of a girl, later identified as Geraldine Fernandez, a friend of the accused. Her body was lying in the gutter at the curb just above the intersection, about seventy feet north of the lamppost and sixty feet south of a tree (which we shall designate as Tree No. 2) on the west side of Stanley Road. A piece of automobile glass was found near her body. If Geraldine was not dead when first seen by the nonmedical witnesses, she was dead on arrival at the post hospital a short time afterward. Death was attributed to intracranial hemorrhage resulting from the application of a "great deal of force." The third body was that of Michael Rodrigue. He was dead. The right side of his head was smashed. An autopsy indicated death was instantaneous. It resulted from severe brain lacerations. Rodrigue's body was located about twenty feet west of the girl's on the grass beyond the sidewalk and about fifty feet south of the tree and eighty feet north of the lamppost.

Two witnesses testified they saw the car smash into the light pole, but neither saw any bodies thrown from the vehicle. By circumstantial evidence, the prosecution attempted to establish that the accused was the driver.

It was shown the car belonged to the accused. It was a 1955, two door, hardtop Pontiac, black and red in color. No fingerprint examination was made of the car's interior, and nothing found therein tended to indicate who had been the driver. An examination of the area showed tire marks on the west curb of Stanley Road, some distance above the tree. A single tire track then appeared on the grass for about forty-five feet to a tree (which we shall designate as Tree No. 1). Bark was torn off Tree No. 1 and there were red paint marks on its trunk. The tire track continued to Tree No. 2, which was also damaged and marked with red paint. The tire track then curved off the grass. No tire tracks or skid or brake marks were found on

the hard, macadam surface of the road. Scattered about the area were a box of facial tissues, some magazines, and a blanket. Examination of the car disclosed that both right tires were flat; the right door was badly damaged, with the entire window frame ripped out. This door was "sprung" open, but it could open only forty-five degrees or "a little more" from the body. The right rear fender was severely damaged and the right rear bumper was torn loose. The left door, with the window rolled down, was intact and undamaged. The accelerator pedal functioned properly. The right front seat, which was of the movable type, was "folded down," and the rear seat was "flipped over and leaned against the back of the front seat." There was no visible damage to the dashboard or the upholstery. Over the top and on the outside of the left door was some moist vomit.

The accused did not testify. However, it appears from the testimony of an Army psychiatrist, which was offered in support of the motion for a continuance, that the accused was suffering from amnesia induced by psychic shock. The doctor expected the accused to recover "partial memory" but he did not believe the accused would "remember much about what happened."

The theory upon which the prosecution proceeded was that the tire track on the grass unmistakably indicated someone's "foot was on the automobile accelerator at the point eight feet below" Tree No. 2, and that someone "had to operate the steering mechanism of that vehicle beyond [the point]" where the tire track left the grass and returned to the roadway. From this premise, trial counsel argued that Rodrigue and Fernandez were not then in the car, and hence only "the accused . . . could have been seated behind the wheel and accelerating the motor."

Apparently, the theory that the mo-

tor was accelerated after impact with Tree No. 2 is predicated upon the testimony of Mr. H. R. Jorgenson, an inspector with the Post Safety Office. His testimony, however, is equally consistent with the fact that there was no pressure on the accelerator pedal, either before or after the impact with Tree No. 2.

Mr. Jorgenson testified that the characteristics of the tire track on the grass indicated the "back wheel . . . [was] spinning at a rate of speed greater than the movement of the car to which it . . . [was] attached." The difference in speed was attained because the construction of the rear axle differential permitted one of the two rear wheels to spin faster than the other when it encountered less friction. From the evidence, it is clear the left wheel was on the road surface. Common experience tells us a grass surface provides less resistance or friction than a dry, hard, macadam roadway. The difference in speed between the right and left wheels is thus accounted for by the physical conditions under which the car was operating, rather than by any inference that the accelerator pedal was depressed during the movement of the car.[1] So far as the steering part of the prosecution theory is concerned, the evidence is also consistent with the fact that the car was not under control after striking the trees. The direction of the tire mark in the grass indicates the vehicle was headed in a southeasterly direction when it got back on the roadway. One prosecution witness testified as follows:

"... I saw this car in a swerved position for maybe 40 or 60 feet and I—the way it appeared to me—it had an accident with another automobile, but there was only one set of headlights and I heard the glass falling when it hit the light post; . . ."

The witness's testimony strongly indicates that the car was not under human control. The only other pros-

---

[1] Trial counsel also asked the witness a general question as to "what causes a car to accelerate?" The witness replied as follows: "It can only accel-

erate if the engine is running and the accelerator pedal is pressed to do that." This testimony has no relation to the meaning of the tire mark in the grass.

ecution witness who saw the accident testified he saw the car well past the middle of Stanley Road, headed toward a barracks on the opposite side, when it pulled sharply to the right or west side of the street. If there was only this conflict in the testimony, the court-martial would have been entirely free to disregard the one and believe the other. But the physical facts, including the impact with Tree No. 2, demonstrate that the latter witness was in error. The credible testimony shows clearly that the car could have been entirely out of control after it hit Tree No. 2 and returned to the roadway. Finally, the position of the bodies is consistent with the conclusion that the accused was not the driver. The prosecution made much of the fact that the accused was intoxicated. If he was in fact drunk, it is not unreasonable to conclude that Rodrigue and Fernandez placed him on the rear seat. Considering the apparent speed of the vehicle and the nature of the collision, it is also not unreasonable to infer that the occupants of the front seat were thrown out on the initial impact; that as the car "swerved" along for "40 or 60 feet," the accused fell forward and rested on the back of the depressed right front seat; and that he was himself thrown from the right side of the car through the half opened door when the car jolted over the curb before smashing into the lamppost on the south side of the intersection.

Taking into consideration all the evidence, we cannot say it is sufficient as a matter of law to support the court-martial's finding that the accused was the driver. United States v Duffy, 3 USCMA 20, 11 CMR 20.

The decision of the board of review is reversed. The findings of guilty are set aside, and the Charge and its specifications are dismissed.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

No good purpose will be served by a lengthy discussion of the reasons in this case which prompt me to dissent. The only point at issue is whether the facts are sufficient to sustain the findings of the court-martial and subsequent reviewing authorities, and a finding either way fixes no law. Accordingly, I make just a brief analysis of the testimony to show why I believe the findings should not be reversed.

My associates say that, as a matter of law, the evidence does not exclude every reasonable hypothesis of innocence, but I take an entirely different view of the record. I first support my position generally by stating that if a court-martial is permitted to rely on circumstantial evidence, certain well-known laws of nature, and expert testimony on the movement of self-propelled vehicles, the evidence is more than sufficient that the accused was the driver of the car. In that connection, I sense in the Court's opinion an undercurrent of belief that cars perform strange and unusual antics when involved in collisions, and that physical evidence and opinions based thereon are of doubtful reliability. Obviously, if that proposition is used as a base, the next step naturally follows, namely, it is impossible to rationalize just what did happen. Conceding that the first part of the base premise may be tenable, objects move within and not without the laws of nature. This automobile was a two door coupe. The rear right window was unbroken and up, and the left door was closed and undamaged. Accordingly, the exit of the bodies had to be through the aperture made by the partial opening of the right door. The car was proceeding around a curve to the left, and centrifugal force would throw the bodies to the right. The first person hurled from the car was a male friend by the name of Rodrigue, the second individual was the fiancee of the accused, and the last party to leave the vehicle was the accused himself. He owned the car and, absent some unusual circumstances, the seating arrangement would normally be three in the front seat with accused on the left driving, the fiancee in the middle, and the friend on the right. It is something more than mere happenstance that their positions on the ground reflect that arrangement.

It is not denied that the foregoing

facts point to the accused as the driver, but it is suggested the theory is speculative and, in testing for probable hypotheses of innocence, a theory is advanced that perhaps the friend was driving. That could not be possible unless the driver of a car can be hurled from under a steering wheel and over the top of or around two people sitting on his right in the same seat. In addition, one believing that to be a possibility is faced with the further facts that the body went out the right door and rolled some seventy-six feet generally parallel to the direction the car was traveling. When I consider all of these improbabilities in relation to the narrow space between the seat and instrument panel, the speed and direction of the car, and the lack of hand holds for the two passengers, I conclude that theory to be unreasonable. While no one has suggested the fiancee was driving, with the accused a passenger in the rear seat, the same reasoning would apply except the obstacle in her way would be one person instead of two.

The next and most tenable, but still unbelievable, hypothesis argued by the defense is that the accused and his fiancee were in the back seat of the car and the friend was driving. To accept that theory, one would have to conclude that the person who could anchor himself to the steering wheel with its attachments and who could best resist the thrust to the right would be hurled across the seat and ejected first; that the woman in the back seat would be propelled over the top of the front seat and out a partially open door; and that the accused would follow the same path while the forward movement of the car was not appreciably slackened. The path of the car, as shown by the markings on the curb and the testimony of the witnesses, indicates that at the speed being driven, in attempting to negotiate the curve, centrifugal force swung the back of the car to the right where that side of the vehicle back of the center collided with a tree. With the rear of the vehicle veering to the right, the direction of force was toward the side of the car and not straight ahead, and this is verified by the path taken by the body of Rodrigue. Manifestly then, anyone sitting in the back seat would have been hurled against the side of the vehicle, not forward over the seat. Moreover, to be thrown forward and then out the door would require the bodies to change direction, which seems highly unlikely without a sudden stopping of the car and without some traces of blood inside the car.

Again, it is suggested by the Court that the accused could have been drunk and placed in the rear seat by his companions. There are several items of evidence which make that an unreasonable theory. First, that would place the fiancee on the right and the driver would have to be catapulted around or over her. There is very little equipment for her to hold to overcome the force which would propel her out of the car while the driver had the steering apparatus readily available for that purpose. Second, as previously stated, the direction of force must have been to the right as, prior to the last collision with the cement post, there was no impact which would throw a person straight forward. On both the first and second impacts, a drunken person in the back seat would have been thrown against the side. The idea advanced that he might have been catapulted onto the back of the right front seat and positioned there until the final head-on crash finds its root in testimony that, after the car came to rest, the upright movable portion of that seat was forward. However, there is not one scintilla of evidence it was in a tilted position until after the forward movement of the car was abruptly stopped by a head-on collision with a cement lamppost. A sudden stop of that nature would cause the movable portion of the seat to be found in the described state.

Finally, expert testimony based on the physical evidence found at the scene of the crime was introduced to establish the hypothesis that the car was accelerated and driven by someone after the first impact. Unless that testimony is discarded as unworthy of belief—and I note that, although my colleagues disagree with the expert

**23**

witness and point out how the different surfaces might account for one wheel turning faster than another, they fail to explain how the right wheel could *spin* without the car having been accelerated—the accused had to be the driver because the other two occupants had been hurled from the car like rocks from a sling and were on the ground some distance from the roadway where the car was being operated.

For the foregoing reasons, I would affirm the decision of the board of review.