UNITED STATES, Appellee

v

SAMUEL J. PETROWSKE, Private First Class,
U. S. Army, Appellant

13 USCMA 330, 32 CMR 330

No. 16,012

November 2, 1962

First Lieutenant Daniel H. Benson argued the cause for Appellant,
Accused. With him on the brief were Lieutenant Colonel Ralph Herrod,
Captain Richard A. Baenen, and Captain Thomas Stapleton.

*First Lieutenant Peter J. McGinn* argued the cause for Appellee, United States. With him on the brief were *Major Francis M. Cooper, Captain Stanley M. Wanger,* and *Captain Alvin B. Fox.*

## Opinion of the Court

QUINN, Chief Judge:

The question before us is whether the record of trial supports the accused's conviction for involuntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 USC § 919.

Appellate defense counsel have singled out certain weaknesses in the Government's trial proof, as ▮ distinguished from the case established in the Article 32 investigation; but to say that the Government had important evidence which it unaccountably failed to present does not necessarily detract from the sufficiency of the case it made out against the accused at trial. United States v Wilson, 4 USCMA 3, 7–8, 15 CMR 3.

Appellate defense counsel contend the Government failed to prove the accused was responsible for the death of the alleged victim, Private Melvin R. Corkern. Specifically, they maintain the evidence is insufficient to show that the body which hurtled out of a car driven by the accused as it caromed off two trees in attempting to round a curve on a road leading to the village of Einsiedlerhof, Germany, was that of Private Corkern. The car traveled so fast that two wheels lifted completely off the ground and it could not negotiate the curve; it crashed into a tree, careened back onto the road, smashed into another tree, from which it "ricocheted" into an oncoming car; and then continued down the road for about seventy-five feet before coming to a stop. The accused got out of the car and tried to leave the area, but was stopped by persons on the scene. Although there is no direct proof of the fact, it is clearly inferable from the evidence that during the car's gyrations the body of a man flew out of the car and landed on the roadway. When seen moments after the collision of the two cars, the body lay in a pool of blood; and it was so grisly a sight that a female passenger, in the car hit by the accused's, testified she did not leave the front part of her car because the body was visible "no matter where you'd go," and she "just didn't want to see it." At this point the Government's presentation weakened a bit. Trial counsel offered no direct evidence of the identity of the body. That critical fact was left to inference. However, circumstantial evidence ▮ will support a conviction; and enough evidence was presented from which the court-martial could conclude beyond a reasonable doubt that the body on the roadway was that of Private Melvin R. Corkern.

Corkern and the accused slept in the same billets. In a pretrial statement admitted in evidence, the accused said he and Corken were together on a drinking spree from about 10:00 a.m. of the morning of the accident, Saturday, June 30, 1961. They ate at the snack bar of the Landstuhl Army Hospital at about 4:00 p.m. Thereafter, they proceeded to the Vogelweh shopping area in a car that had been borrowed by the accused. The record of trial does not show the exact location of this area in relation to the town of Landstuhl and the Army hospital, but from the testimony of the witnesses and the accused's pretrial statement, it is reasonably inferable that all these places, and the site of the accident, are within a few miles of each other. Cf. United States v Rowe, 13 USCMA 302, 314, 32 CMR 302.

According to the accused, he and Corkern went to the shopping area to get "something" for Corkern. From this point on, the accused professed a loss of memory. Other witnesses established that he and Corkern were in a gasthaus in downtown Landstuhl until about 7:15 p.m. After some conversation with other persons, Corkern left with the accused. The accident occurred between 8:17 and 8:30 p.m., in the nearby town of Einsiedlerhof.

Witnesses testified that the body at the scene of the accident was that of a male dressed in civilian clothes. One witness said the trousers were "blue"; another testified it was a "type of blue"; a third stated she saw "something blue fly off" the accused's car. One witness described the shirt in which the body was clothed as being a "white sport shirt." Military police arrived on the scene at about nine o'clock. It is reasonably inferable the body had been removed from the scene by that time. About midnight, Sergeant Farthing was called to the morgue of the Landstuhl Army Hospital to identify a body. He identified it as that of Corkern. He said he "believe[d]" the body was dressed in "blue and gray" civilian clothes; he "believe[d]" the trousers were "gray" but he could not recall the color of the shirt. A hospital report shows an autopsy was performed on the body of Corkern on July 3, 1961. The principal cause of death was given as basilar fracture with intracranial hemorrhage. A contributory cause of death was listed as crushing chest injury with lung contusion-hemorrhage. Also noted were fractures of the bones of the legs and ribs, and multiple abrasions and lacerations. The report indicated that Corkern was dead on arrival at the hospital at 8:40 p.m., June 30, 1961, the night of the incident.[1]

Experience teaches that when a particular relation is established it is likely to continue for such time ▮▮▮▮▮▮▮ in the future as is compatible with the nature of the relation. See Wigmore, Evidence, 3d ed, §§ 435, 437; Manual for Courts-Martial, United States, 1951, paragraph 138a, page 240. If the relation has an inherent tendency toward change, the inference of continuity is, of course, greatly weakened. Thus, it has been said that if the condition shown to exist at a given time is subject to change on the "single impulse or volition" of a person, it may be insufficient to support the inference the condition continued for even a short period of time. Cleveland, C., C. & St. L. Ry. Co. v Starks, 58 Ind App 341, 106 NE 646. It may be, therefore, as appellate defense counsel ▮▮▮▮▮▮▮ very ably argue, that the single fact that the accused and Corkern were seen together at 7:15 p.m. does not support the inference they were still together at the time of the accident, which occurred about one hour and a quarter later. However, that fact does not stand alone. Other circumstances in accused's association with Corkern justify the conclusion by the court-martial that the two were still together when the car ran off the road. "[B]y adding circumstance to circumstance," says Professor Wigmore, "we obtain a composite feature . . . which as a whole cannot be supposed to be associated with more than a single object." Wigmore, supra, § 411. See also United States v Dickenson, 6 USCMA 438, 463, 20 CMR 154.

On the accused's own admission, he and Corkern were continuously together from 10:00 a.m. until after 4:00 p.m. At that time, they proceeded to the Vogelweh shopping center to get "something" for Corkern. Although the accused professed to know nothing of what transpired from that moment on, it is clear from the accused's statement that Corkern relied upon him for transportation for the shopping trip. Manifestly, they did not separate at the shopping center, since they were seen together at the beer hall in "downtown" Landstuhl more than three hours after the accused's last recollection of the events. Departing from the beer hall, they led one of the persons with whom

---

[1] Accused's counsel strenuously argue that the notation of the time of death in the autopsy report is irrelevant to the purpose of the report, and, therefore, constitutes inadmissible hearsay. Time of death, however, is an important item in autopsy protocol. The standard military manual on the subject specifically directs that "All available sources of information should be utilized in determining the time of death." Autopsy Manual, TM 8–300, NAVMED P–5065, AFM 160–19, July 1960, paragraph 116, page 58. See also SF–503 (Clinical Record-Autopsy Protocol) provided for by AR 40–2, paragraph 9b(4).

they had been in conversation "to understand" they had an automobile outside.

Other matters which the court-martial could consider are the following: The driver of the car with which the accused's collided did not see any body in the roadway or in the vicinity as he proceeded up the road before the collision; the proximity of the scene of the accident to the hospital; the close correspondence between the time of the accident and the time of the arrival of Corkern's body at the Landstuhl Hospital; the apparent impact with which the body hit the roadway after flying out of the accused's car, and the kind and number of injuries found on Cor-

kern's body; the apparent lifelessness of the body on the roadway and the report that Corkern was dead on arrival at the hospital; the color and type of clothing worn by the body and the clothing worn by Corkern when seen at the hospital about midnight. These matters, and those enumerated earlier in our opinion, amply support the court-martial's finding that the body catapulted from the accused's car was that of Private Melvin R. Corkern. See United States v Johnson, 9 USCMA 178, 25 CMR 440.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.