UNITED STATES, Appellee

v

HARRY E. MENSCH, Technical Sergeant, U. S. Air Force, Appellant

13 USCMA 451, 32 CMR 451

No. 16,221

February 8, 1963

*Captain Hugh J. Dolan* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel E. Henderson, Jr., Colonel Joseph E. Krysakowski,* and *Lieutenant Colonel Wallace N. Clark.*

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

QUINN, Chief Judge:

This forty-four-year-old Sergeant, with almost eighteen years of outstanding service, was convicted by a general court-martial of larceny, and attempted wrongful sale of parts of an aircraft delivered to Clark Air Force Base for salvage, in violation of Articles 121 and 80, Uniform Code of Military Justice, 10 USC §§ 921, 880, respectively. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for two years. The convening authority approved the findings of guilty, but modified the sentence by reducing the period of confinement and the amount and period of the forfeitures and substituting a bad-conduct discharge for the dishonorable discharge.[1]

The board of review affirmed. We granted further review to consider whether, *aliunde* the accused's pretrial statements, there is evidence in the record of trial tending to establish the probable existence of each element of the offenses charged, other than the identity of the wrongdoer. See United States v Smith, 13 USCMA 105, 32 CMR 105.

Crew members of a C-47 aircraft, bearing identification number 5930, testified that they checked the aircraft for the flight from Taipei to Clark Air Force Base, for delivery of the plane for salvage. The flight mechanic said the aircraft was "fully equipped." The radio operator said the aircraft had a high frequency transmitter, type T-47

---

[1] To give the accused an opportunity to earn restoration to duty, the convening authority directed that the confinement be served in an Air Force retraining center.

for air to ground communication, which was the "same type" as prosecution exhibit 1; it had a J68 junction box, containing two dynamotors to supply power for the VHF communication system, which was "similar" to prosecution exhibit 2; the plane's interphone system was powered by an AM 26, which was "similar" to prosecution exhibit 3. The witness also identified prosecution exhibit 4 as a coder control which emits an SOS signal and the aircraft's serial number in event of emergency. The coder is preset with the transmitter before flight. Although the radio operator could not say whether a coder was aboard 5930, it is reasonably inferable from the testimony on the "fully equipped," and flight-worthy state of the aircraft that such emergency equipment was carried on the over-ocean flight.

The plane was delivered to Clark Air Force Base in January 1961. It was positioned in the flight maintenance area, and the main entranceway was padlocked. The key to the padlock was kept in the flight maintenance office, to which the accused and a number of others had ready access. In the interim between delivery and September 1, some salvage operations were conducted on the craft, which included, among other things, removal of the propellers and wings. Other parts were removed for use in other aircraft. This procedure was called "cannibalization." Each act of cannibalization required specific authorization from the chief of maintenance and a record entry. The records for 5930 showed that a number of parts had been "cannibalized," but no equipment similar to prosecution exhibits 1 through 4 was removed. Eventually, the airplane was selected for public sale.

According to standard sales procedure, the aircraft was inspected, and an inventory was made of the equipment to be included in the sale. No article listed on a "save list" for the aircraft could be sold. The "save list" itemized parts that had to be removed and turned back to regular supply channels before final disposal of the aircraft. The "save list" for 5930 did not contain any equipment represented by prosecution exhibits 1 through 4. However, according to the sale inventory, this equipment was not on board the aircraft at that time. It also appears that if a coder assembly (prosecution exhibit 4) is removed and sold separately, it is "demilitarized," that is, cut with a torch and sold only as scrap. If sold separately, equipment such as prosecution exhibits 2 and 3 is similarly demilitarized. The Base marketing supervisor testified he had held that office since 1959, and to his knowledge about one hundred transmitters had been disposed of, but these had different "knobs" and dynamotor dials from prosecution exhibit 1; no instrument like prosecution exhibit 1 had been sold, either as scrap or as a component part of a plane.

Each prosecution exhibit had a small plate affixed to it which listed its type. The type number of each corresponded with the Air Force nomenclature for a similar item; and each type was listed on an Air Force stock list. The emergency coder (prosecution exhibit 4) and the junction box (prosecution exhibit 2) were marked "US Property." The transmitter weighed about sixty-five pounds; the junction box with the dynamotors weighed about thirty pounds; each of the other two pieces of equipment weighed less than ten pounds. A witness testified that all the prosecution exhibits were "peculiar to the . . . [C-47] since it was developed."

On August 30, 1961, agents of the Office of Special Investigations and members of the Constabulary of the Republic of the Philippines seized prosecution exhibits 1 through 4 from two "very young" airmen, who were negotiating for their sale with a civilian employee of the Office of Special Investigations posing as a buyer for the Philippine Air Lines. The negotiations were carried on in an upstairs apartment of a small civilian house in the town of Angeles.

As to larceny, the independent evi-

453

dence, *aliunde* the confession, need not establish the offense beyond all doubt. It is sufficient if it shows that the property set out in the specification was "missing, under circumstances indicating that it was *probably* stolen." (Emphasis supplied.) United States v Leal, 7 USCMA 15, 19, 21 CMR 141. It appears reasonably probable that the C-47 flown from Taipei to Clark Air Force Base contained equipment of the same kind as prosecution exhibits 1 through 4. These items were not aboard the aircraft when it was inventoried for sale. Under standing operating procedures, the equipment could be removed for only two legitimate reasons; one was "cannibalization," and the other was by authority of the "save list." Records were maintained for both operations, but neither set of records contains an entry justifying the removal of these particular pieces of equipment. Considering the weight, size and number of the missing articles, it is unlikely that they were accidentally misplaced. Thus, the circumstances indicate that the articles were probably stolen. United States v Leal, supra. Cf. United States v Brown, 3 USCMA 242, 11 CMR 242. The Government, therefore, met its burden of establishing by evidence, *aliunde* the accused's confession, that the larceny charged had probably been committed.

Turning to the offense of attempted sale of military property, the evidence shows that all of the seized items were "peculiar" to a C-47 aircraft. Two of the items bore the legend "US Property," and all had identifying type numbers corresponding to Air Force nomenclature for the same kind of equipment. About the same time, similar articles had disappeared from a Government C-47 under circumstances indicating they had probably been stolen. The persons attempting to effect the sale were "very young" members of the Air Force stationed at the Base at which the aircraft was stored. The negotiations for the sale were conducted in the evening in a civilian house. The close correspondence between the property missing from the Government aircraft and that seized from the two airmen is sufficient to establish with reasonable probability that the stolen property was the property being offered for sale. See United States v Petrowske, 13 USCMA 330, 32 CMR 330. The circumstances indicate with reasonable probability that the prospective vendors had no authority to sell military property. The independent evidence as to this charge, therefore, also satisfies the rule requiring corroboration of a confession.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.