UNITED STATES, Appellee,

v.

Matthew L. WAITS, First Lieutenant,
U.S. Army, Appellant.

No. 64,589.

CM 8802193.

U.S. Court of Military Appeals.

Submitted Sept. 27, 1990.

Decided April 23, 1991.

---

For Appellant: *Colonel Robert B. Kirby, Major Michael J. Kelleher, Captain W. Renn Gade* (on brief); *Captain Jeffrey J. Fleming.*

For Appellee: *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Denise J. Arn, Captain Karen R. O'Brien* (on brief); *Captain Karen V. Johnson.*

*Opinion of the Court*

EVERETT, Senior Judge:

In a contested general court-martial, a military judge sitting alone convicted Lieutenant Waits of violating a general regulation by wrongfully acquiring and shipping ammunition through the mail and of conduct unbecoming an officer by stealing, packaging, shipping through the mails, and attempting to sell ammunition and other military property. These offenses were violations of Articles 92 and 133, Uniform Code of Military Justice, 10 USC §§ 892 and 933, respectively. The judge sentenced appellant to dismissal from the Army, confinement for 3 years, and total forfeitures. The convening authority approved these results, and the Court of Military Review affirmed in a short-form opinion.

We granted Waits' petition for review to determine whether the allegation of violating a regulation was an unreasonable multiplication of charges with a similar clause in the specification alleging conduct unbecoming an officer. 31 MJ 486 (1990). We hold that the offenses should have been combined and that, under the circumstances, appellant was prejudiced as to both findings and sentence.

### I

■ The specification alleging a violation of a lawful general regulation as consolidated avers that Waits

> did ... during the period from on or about 26 January 1988 to on or about 6 April 1988, violate a lawful general regulation, to wit: paragraphs 13b(13) and (14), USAREUR Regulation 632–10, dated 26 January 1988, by *wrongfully acquiring and shipping through the mail:* military ammunition, to wit, *five 5.56 millimeter ball tracer rounds; and seven smoke grenades.*[*]

(Emphasis added.) In the specification asserting conduct unbecoming an officer, the

Government charged that, during the same time and at the same place, appellant

> did ... wrongfully *steal,* package, and *ship through the mail with a falsified customs document,* and attempt to sell, three 30 round 5.56 millimeter ammunition magazines, one 20 round 5.56 millimeter ammunition magazine, two boxes of target pasters, *seven smoke grenades, and five 5.56 millimeter ball tracer rounds ...*

(Emphasis added.)

Thus, the wording of the specifications allege larceny of specific amounts and types of ammunition, and wrongful shipping of the same specific amounts and types of ammunition through the mails. Further, evidence adduced at trial showed that the ammunition referred to in each specification was, indeed, the same ammunition referred to in the other.

"In *United States v. Timberlake,* 18 MJ 371 (CMA 1984), we held that an officer cannot be convicted both of a substantive crime and of unbecoming conduct which consists of the commission of that crime." *United States v. Taylor,* 23 MJ 314, 3186r (CMA 1987). Since the actions that constituted conduct unbecoming an officer included the same acts that violated the regulation, the latter conviction cannot stand distinct from the former. *See generally United States v. Baker,* 14 MJ 361 (CMA 1983); *cf. Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).

■ Citing *United States v. Jones,* 23 MJ 301 (CMA 1987), the Government argues, however, that this issue was waived. In *Jones,* though, we held only that, where specifications might be read as multiplicious, the accused waived his appellate complaint when he did not move to make the specifications more definite and certain in order to make clear the overlapping relationship between them. Where, as here, that relationship is clear in the pleadings and is confirmed by the evidence, the military judge's failure to treat them as multi-

---

* This specification was a consolidation of two specifications alleging separate violations of the regulation by wrongfully acquiring and shipping the ammunition and by wrongfully acquiring and shipping the grenades.

plicious is plain error. *United States v. Allen*, 16 MJ 395, 396 (CMA 1983); *United States v. Holt*, 16 MJ 393 (CMA 1983). Therefore, appellant's multiplicity complaint that was available but unasserted at trial remains, nonetheless, alive and well on appeal. *Cf.* Mil.R.Evid. 103(d), Manual for Courts–Martial, United States, 1984.

Appellant is entitled to consolidation of these specifications.

## II

■ The question remains whether Waits suffered substantial harm from this multiplicity. Appellant points out that the military judge expressly held that the two offenses were separate for findings *and sentence* when he computed the maximum imposable confinement to be 12 years. As such, appellant argues that he is entitled to sentence relief.

A decision whether appellant is entitled to sentence relief and, if so, what sort of relief is not so simple as appellant suggests. When error has been uncovered on appeal, an appellate court must determine whether "the error materially prejudices the substantial rights of the accused." Art. 59(a), UCMJ, 10 USC § 859(a). If the appellate court concludes that there is a fair risk of such prejudice, then it must address the sentence in order to

> assure that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed. Only in this way can the requirements of Article 59(a), UCMJ, 10 USC § 859(a), be reconciled with the Code provisions that findings and sentence be rendered by the court-martial, *see* Articles 51 and 52, UCMJ, 10 USC §§ 851 and 852, respectively.

*United States v. Suzuki*, 20 MJ 248, 249& (CMA 1985).

In *United States v. Sales*, 22 MJ 305 (CMA 1986), we had occasion to apply these principles in the context of a multiplicity error. There, like here, the military judge had treated as separate for both findings and sentence specifications which the Court of Military Review later had concluded were multiplicious for both purposes. Accordingly, the court had reassessed the sentence—and then had affirmed it. Ultimately, we returned the case to the Court of Military Review for further proceedings, because the court's initial action was ambiguous as to whether its reassessment was an exercise of its responsibility to approve only a sentence which it considered "appropriate," *see* Art. 66(c), UCMJ, 10 USC § 866(c), or whether it had determined that the adjudged sentence was "no greater than that which would have been imposed if the" offenses had been treated as multiplicious at trial. *Cf. United States v. Suzuki, supra.*

In the process of reaching our conclusion in *Sales*, we reasoned:

> In some cases, the Court of Military Review may conclude that it cannot reliably determine what sentence would have been imposed at the trial level if the error had not occurred. Under these circumstances, a rehearing on sentence is in order....
>
> On other occasions, the Court of Military Review may be convinced that even if no error had occurred at trial, the accused's sentence would have been at least of a certain magnitude. Under those circumstances the Court of Military Review need not order a rehearing on sentence, but instead may itself reassess the sentence....

22 MJ at 307 (footnote omitted). Important for present purposes is the fact that our remand in *Sales* to clarify the ambiguity of the Court of Military Review's reassessment—without criticizing the court's decision on reassessment to affirm the sentence—quite clearly implied that, even though the military judge had treated the multiplicious findings as separate for sentencing, the Court of Military Review still was free to conclude that the sentence would not have been less absent the error.

Here, as we have held, the military judge erred in treating the offenses as separate for punishment purposes. The Court of Military Review affirmed the sentence

without reference to that error and without any expressed reassessment of the sentence in light of that error. Certainly, the sentence to 3 years' confinement cannot be viewed as "lenient in relation to the" correct maximum of 10 years' confinement. *Cf. United States v. Sales, supra* at 308. Under these circumstances, we conclude that a remand to the Court of Military Review is appropriate in order to enable that court to address the question of prejudice consistent with the principles set out in *United States v. Sales* and *United States v. Suzuki,* both *supra.*

### III

The consolidated specification of Charge II is consolidated with the specification of Charge VI by inserting in the specification of Charge VI the words "and in violation of a lawful general regulation, to wit: paragraphs 13b(13) and (14), USAREUR Regulation 632–10, dated 26 January 1988," after the words "with a falsified customs document" and before the words "and attempt to sell."

The decision of the United States Army Court of Military Review as to Charge VI and its newly consolidated specification is affirmed, but the decision of that court as to sentence is set aside. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for further review of the sentence under Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c).

Chief Judge SULLIVAN concurs.

COX, Judge (concurring in part and dissenting in part):

From late January to early April 1988, appellant was a range control officer stationed in the Federal Republic of Germany. He was the officer-in-charge of nine rifle ranges.

On April 6, 1988, a postal worker at Chicago's O'Hare Airport noticed a partially opened package on the floor of his work area. According to normal procedures, he took the package to the rewrapping section. The package came from an APO (Army Post Office) and, according to the customs declaration, contained "bookends."

Noticing, however, the word "grenade" visible on a canister inside the package, postal workers called in military and civilian investigators. A thorough inspection revealed seven smoke grenades, five M–16 tracer rounds, four M–16 magazines, and two boxes of "target pasters." All items were subsequently identified as U.S. military property. No bookends were found.

The package was addressed to appellant's father in Cincinnati, Ohio. The return address denominated appellant's unit and included the words, "Attn Waits." Along with the military property, the package contained an unsigned, handwritten note, which read:

> More price tags, just in case. More pasters for us or for sale in June. Tracers are probably still in good shape, but I can't guarantee it. Smoke w/*open* seals need to [crossed out word(s)] be opened up & extra packing pulled out (Used to get rid of rattle). I saw similar smoke (maybe *identical*) in SGN for $35–$45 per unit! What do you think?

An expert positively identified appellant as the author of the note based on handwriting specimens obtained from him. Appellant subscribed to a magazine called *Shotgun News* which, according to testimony received, is commonly abbreviated "SGN."

The Government's response to this incident was the preferral and referral of numerous Charges and specifications, all springing from this single discovery. They may be summarized as follows:

Ch. I    Conspiracy (Art. 81)
  Spec.  With father, to steal and dispose of military property.
Ch. II    Violation of USAREUR Regulation (Art. 92)
  Spec. 1 By acquiring and mailing M–16 ammunition.
  Spec. 2 By acquiring and mailing smoke grenades.

Ch. III False official statement (Art. 107)

Spec. Customs declaration.

Ch. IV Wrongful disposition of military property (Art. 108)

Spec. By stealing, wrapping, and mailing it.

Ch. V Larceny (Art. 121)

Spec. Explosives and other U.S. military property.

Ch. VI Conduct unbecoming an officer (Art. 133)

Spec. By stealing, packaging, and shipping, with falsified customs declaration, military property, and by attempting to sell same.

During a hearing before pleas and prior to the presentation of evidence, the military judge began shredding out multiplicious Charges and specifications. In particular, he took the following action:

1. He required the prosecution to elect between Charge IV and its specification (wrongful disposition by stealing, wrapping and mailing) and Charge VI and its specification (conduct unbecoming: stealing, packaging, shipping). The prosecution chose conduct unbecoming.

2. He required the prosecution to choose between Charge V and its specification (larceny) and Charge VI and its specification (conduct unbecoming: stealing). The prosecution again chose Charge VI.

3. He required the prosecution to choose between Charge III and its specification (false official statement) and Charge VI and its specification (conduct unbecoming: false official statement). Again, the prosecution clung to Charge VI.

4. Next, he pronounced specifications 1 and 2 of Charge II multiplicious for findings and sentence, and he ordered the specifications merged.

These rulings resolved all questions on multiplicity to the satisfaction of the defense. Appellant was left with three Charges and three specifications: Conspiracy; violating a regulation, and conduct unbecoming.

After trial on the merits, the military judge acquitted appellant of conspiracy. (There was no evidence whatever that ap-pellant's *father* ever agreed to the criminal enterprise.) The judge convicted appellant of one specification of conduct unbecoming, as charged, and one specification of violating a regulation.

As the majority opinion notes, the military judge considered these two specifications separate for both findings and sentencing purposes. 32 MJ 276. I agree with the majority that they were not. Appellate government counsels' argument is that the specifications contain different elements; thus neither is included within the other. *See Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). According to the Government,

> [T]here was no obligation on trial counsel to prove that appellant violated a lawful general regulation by acquiring and shipping ammunition through the mail, in order to sustain a conviction under Charge VI and its Specification. The conduct alleged to be unbecoming of an officer under Charge VI was not the violation of the regulation. Rather, it was the fact that appellant disgraced his standing as an officer, compromised his position of trust as a range control officer, and damaged the credibility and integrity of the United States Army, by stealing military property and shipping it using a falsified customs document. Thus, the charges do not fairly embrace one another....

Judge Cook hit the nail on the head some years ago when he noted that, for multiplicity purposes, it is the *conduct elements* that govern, not the happenstance of the proscriptions deriving from statutes, regulations, or general articles. *See United States v. Vasquez*, 16 MJ 444, 445 (CMA 1983) (concurring); *United States v. Doss*, 15 MJ 409, 414 (CMA 1983) (concurring in the result). Here there were no aspects of Charge II and its consolidated specification—acquiring and mailing M–16 ammunition and smoke grenades—that were not fully incorporated within the conduct-unbecoming specification—stealing, packaging, and shipping, *inter alia*, the same proper-

ty. The two specifications were multiplicious in all respects.

That brings me to the question of remedy, and here I depart from my Brothers. The military judge calculated the maximum confinement for the Article 92 offense to be 2 years. *See* para. 16e(1), part IV, Manual for Courts–Martial, United States, 1984. Conduct unbecoming an officer and gentleman is punishable by:

> Dismissal, forfeiture of all pay and allowances, and *confinement for a period not in excess of that authorized for the most analogous offense for which a punishment is prescribed in this Manual,* or, if none is prescribed, for 1 year.

Para. 59e, part IV, Manual, *supra* (emphasis added).

The military judge considered all of the offenses referenced within the conduct-unbecoming specification to be internally "multiplicious for sentencing purposes." As he explained:

> [T]he offenses that I convicted the accused of committing under Article 133, were basically—the offenses that you'd look at for the maximum punishment would be the larceny and—well, the shipping through the mail would have been multiplicious. The false customs document—I considered those all multiplicious. And so, the maximum—and the disposition of military property—and so the maximum for the disposition of military property [explosives] is ten years.

*See* para. 32e(1)(b), part IV, Manual, *supra.*

Thus the military judge arrived at a maximum possible confinement of 12 years—instead of 10 years. Nevertheless, he sentenced appellant to just 3 years' confinement.[1] The majority finds prejudice here; I do not.

First, the judge gave appellant an enormous break by requiring the prosecution to elect specifications prior to the presentation of any evidence. I assume the prosecution would rather have taken a shot at convicting appellant of the four separate aspects of his conduct: stealing government property, mailing ammunition, making a false customs declaration, and wrongfully disposing of military property. The conduct-unbecoming charge, I deduce, was alleged as a backup position in the event of a failure of proof of the other charges.

The judge, however, pulled the rug from under the prosecution, forcing them to abandon most of the charges and go with the backup. Given the contingencies of proof here (there was no direct evidence of how appellant acquired the property or what his state of mind was), I know of nothing that compelled the judge to give this tactical advantage to appellant.[2] Needless to say, had it been otherwise, appellant might have faced a much stiffer maximum punishment.

Second, even within the sentence limitations imposed, I have complete confidence that the judge sentenced appellant for his conduct, not the number of specifications. The minor difference in punishment ceilings here suggests no likelihood that the judge would have handed down a lesser sentence had the maximum confinement been 10 years instead of 12. *See* Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).

---

1. Any who wince at the 3 years' confinement adjudged do not appreciate the nature of the offense of conduct unbecoming an officer and gentleman, of which appellant stands convicted. Although his breach of trust in diverting military property for his personal use and gain and shipping it through the mails was serious enough, especially given the nature of the property, it was but a minor aspect of this uniquely military offense. *Cf.* United States Sentencing Guideline § 3B1.3 (increase in sentence level for abuse of position of trust). The essence of the military offense is the damage done to the officer's own "character as a gentleman" or "standing as an officer." Para. 59c(2), part IV, Manual for Courts–Martial, United States, 1984. Egregious misconduct on the part of one officer, moreover, tends to degrade the respect and authority of all officers. International events have a way of reminding us from time to time of the continued need for effective military leadership.

2. The Government wasn't exactly playing hardball with appellant either. *See, e.g.,* 18 USC §§ 842, 844; and 922, 924.

Focusing on this minuscule oversight—not raised, after all, by the defense at trial—to the exclusion of the full record, is a distortion and is unfair to the military judge. I would dismiss Charge II and its specification, but I would affirm the decision below as to Charge VI and its specification and the sentence.