**UNITED STATES**

v.

**Sergeant Harold T. BOST, FR243–31–0758 United States Air Force.**

**ACM 29395.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 June 1991.

Decided 28 April 1992.

---

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Captain Ursula P. Moul.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, and Captain Thomas E. Wand.

Before LEONARD, RIVES, and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

In this case we grapple with another aspect of the prosecution of larcenies of pay and allowances, proof of ownership of the property alleged to have been stolen. Sergeant Bost was convicted of two offenses, a false statement in connection with his certifications relating to eligibility for basic allowance for quarters (BAQ) at the rate paid to a person with dependents and a larceny of the same allowances over more than 3 and a half years.[1] We were concerned about the adequacy of the evidence to show that Sergeant Bost was not entitled to the BAQ that he was convicted of stealing, and we specified issues relating to that concern and to the assigned error. We now hold that there was insufficient proof that Sergeant Bost was not entitled to the allowance, and we set aside the larceny conviction.

### I. Larceny and Ownership

Prosecutions for stealing BAQ to which one is not entitled can be surprisingly complicated.[2] Today we note yet another complexity in such cases that is often overlooked. Common in all larceny prosecutions is the need to prove that the property taken "belonged to a certain person," Manual For Courts–Martial, United States,

---

1. The crimes alleged are violations of Articles 107 and 121, UCMJ, 10 U.S.C. §§ 907 and 921 (1988), respectively. Sergeant Bost was sentenced to be discharged from the service with a bad-conduct discharge, to be confined for 12 months, to forfeit $500 pay per month for 12 months, and to be reduced to E–1. The convening authority approved the sentence as adjudged.

2. Article 121 combines several common law theft offenses. In *United States v. Dean*, 33 M.J. 505 (A.F.C.M.R.1991), *pet. denied*, 32 M.J. 308 (C.M.A.1991), we explored the differences that can arise in the three theories in such cases, wrongful taking, wrongful withholding, and obtaining by false pretenses.

1984, Part IV, paragraphs 46.b.(1)(b), 46.-c.(1)(c)(iii). Indeed, it is no exaggeration to say that it is black letter law:

> An essential element of larceny is that the thing taken ... should be the property of another, since it is not larceny for a person to take his own goods from one who has no legal right to withhold them from him.

52A C.J.S. *Larceny* § 13.a. (1968). In this case the element bears emphasis: The prosecution must prove that the property stolen was owned by someone *other than the appellant*, or that someone *other than the appellant* had a superior right to possession of it. *United States v. Trout*, 12 C.M.R. 785 (A.F.B.R.1953); *United States v. Smith*, 12 C.M.R. 725 (A.F.B.R.1953), *pet. denied*, — U.S.C.M.A. —, 13 C.M.R. 142 (1953); *United States v. Strouphauer*, 8 C.M.R. 790 (A.F.B.R.1953); *United States v. McGregor*, 6 C.M.R. 709 (A.F.B.R. 1952); *United States v. Dennison*, 5 C.M.R. 581 (A.F.B.R.1952); *United States v. Davis*, 5 C.M.R. 577 (A.F.B.R.1952); *United States v. O'Shana*, 4 C.M.R. 631 (A.F.B.R.1952); *United States v. Soppa*, 4 C.M.R. 619 (A.F.B.R.1952).[3] Confusion about this point seems to abound in cases involving alleged larcenies of allowances,[4] but they are not different from other larcenies: the prosecution must prove that the accused was not entitled to receive the allowance that he is alleged to have received.

## II. Sufficiency of Proof

■ We now turn to the evidence in Sergeant Bost's case. He was married but separated from his wife when he entered active duty in 1986. On the strength of the marriage certificate and after Bost disclosed the status of his marriage and the location of his wife, the paymasters at his basic training base started his entitlement to BAQ at the "with dependents" rate.[5] In

---

**3.** *See also United States v. Godeau*, 44 C.M.R. 438 (A.C.M.R.1971); *United States v. Griffin*, 41 C.M.R. 440 (A.C.M.R.1969); *United States v. Scoles*, 32 C.M.R. 614 (A.B.R.1962), *reversed on other grounds*, 14 U.S.C.M.A. 14, 32 C.M.R. 226 (1953); *United States v. Grant*, 26 C.M.R. 692 (A.B.R.1958); *United States v. Jones*, 15 C.M.R. 591 (C.G.B.R.1954); *United States v. Wilson*, 11 C.M.R. 609 (N.B.R.1953).

**4.** *See, e.g., United States v. Evans*, 34 M.J. 1051 (A.F.C.M.R.1992) (larceny specification defective in that it alleged owner of BAQ to be spouse, not United States); *United States v. Roberts*, 33 M.J. 819 (N.M.C.M.R.1991) (accused otherwise entitled to BAQ not guilty of wrongful appropriation of it when he failed to spend it to support spouse); *United States v. Lemieux*, 25 C.M.R. 516 (A.B.R.1957), *remanded*, 10 U.S.C.M.A. 10, 27 C.M.R. 84 (1958) (one who contributes his own pay to an allotment to another cannot be convicted of having stolen *that* part of the checks sent to the beneficiary, because *that* part is the contributor's money). Only old hands will recognize the allowance in *Lemieux* as what was once called the "Class Q" allotment, now long out of service. It provided part of the servicemember's pay and allowances directly to his dependents for their support. Part of it was a contribution by the member, and another part was an additional contribution by the government to the dependent. The member's contribution might even have been involuntary.

**5.** When we examine the eligibility criteria, we find it to be complex beyond description. BAQ is one of the constellation of special allowances paid to military personnel in various combinations with their basic pay to compensate for special conditions or risks that they encounter. BAQ is paid to help assure that persons not living in quarters provided by the government will have adequate housing.

BAQ is a statutory allowance. 37 U.S.C. § 403(a) (1988). Implementing the statute are provisions in the Department of Defense Pay and Entitlements Manual (hereafter DoD Pay Manual) and in Air Force Manual 177–373, "Joint Uniform Military Pay System AFO [Accounting and Finance Office] Procedures." The authority to promulgate implementing regulations is provided to the service secretaries by 37 U.S.C. § 403(h) (1988).

To summarize the statutory and regulatory scheme, it appears in such cases that a servicemember might have no entitlement to BAQ at all, might have some entitlement even as a single person living in government quarters, and might if married or supporting other dependents have an entitlement to BAQ at yet a higher rate. The higher rate is the inducement that leads some to claim marital relationships and dependents falsely. When prosecuting these cases, the government must discriminate between the part of BAQ to which the accused is really entitled (if any) and the excess that he stole. The prosecution sometimes concedes the entitlement to BAQ that is not paid at the "with dependents" rate. This tends in many cases to focus the trial on marital and dependency issues. This is such a case.

The statute also specifically provides to the secretaries of each service the authority to

March 1987, Sergeant Bost was transferred to Barksdale Air Force Base at Shreveport, Louisiana. Mrs. Bost never joined him at either assignment. Nonetheless, Sergeant Bost contributed to her support at least to the extent that he paid some of the debts that they had incurred, including a debt of $1,000 which he paid in November 1987. Mrs. Bost divorced Sergeant Bost in 1988, after having served notice of the action by publication in a North Carolina newspaper. He said at trial that he did not learn of the divorce until much later.

Sergeant Bost cohabited in off-base quarters in Shreveport for 11 months beginning in September 1989 with his girlfriend, the mother of his child. Despite his obvious knowledge that he was not living with his wife in Shreveport, Sergeant Bost falsely stated in December 1989 that his wife was living in Shreveport. He made that false statement upon recertification of his eligibility for BAQ and was convicted accordingly, and our discussion today does not affect that conviction, which we approve.

With that marital and financial history in mind, the court-martial acquitted Sergeant Bost of any larceny that preceded his assignment to Barksdale, but it convicted him of larceny of BAQ at the "with dependents" rate for the period of his assignment at Barksdale. Therefore, we turn to the sufficiency of the evidence to show that Sergeant Bost was not entitled to receive BAQ at the "with dependents" rate while he was stationed at Barksdale.

The prosecution's several witnesses included three whose testimony might have addressed entitlement. First was the paymaster's customer service representative. Next was the "base BAQ monitor," a noncommissioned officer assigned to the billeting office. Finally came a noncommissioned officer assigned to the paymaster's travel accounting branch.

The paymaster's customer service representative testified mainly about the extent of what might have been called an overpayment, i.e., the difference between the partial BAQ, "single rate" entitlement that was not disputed and the full BAQ "with dependents" rate that was. He also described procedures relating to the periodic recertifications. During the cross-examination on that subject, the defense alluded to a two-page extract from Air Force Manual 177-373, "Joint Uniform Military Pay System AFO [Accounting and Finance Office] Procedures," that was later admitted, but it does not cover the elements of the entitlement.[6]

"make any determination necessary to administer this section with regard to enlisted members, *including determinations of dependency and relationship*." 37 U.S.C. § 403(h) (1988) (emphasis added). That authority may be redelegated, and, in the Air Force, the authority has been delegated to accounting and finance officers, our paymasters. DoD Pay Manual, para. 30201.b, 30202, and table 3-2-1. By taking the statute and the implementing regulation together, they might derive a list of the criteria for eligibility to draw BAQ at the "with dependents" rate, but the effort is excruciating, likely possible only by an expert.

Presumably, the experts do so periodically. Dependency determinations relating to BAQ should be made annually and upon arrival at new permanent stations. A.F.M. 177-373, vol. IV, para. 2-4.b.(2), 3-9. The successive annual "redeterminations" assess eligibility for the *preceding* period, so that a "redetermination" that one lacks the required relationship or dependency voids entitlement *retroactively*, at least for administrative purposes. A.F.M. 177-373, vol. IV, para. 3-8.b. We infer that such a determination must be made upon a member's initial claim, too. The regulation makes entitlement and payment virtually automatic consequences of a favorable determination, *id.* at para. 3-7.a.

Considerable guidance is given to accounting and finance officers for that determination. More guidance is found in DoD Pay Manual, para. 30232 (lawful spouse), 30233 (validity of marriage), 30236 (support), 30236 through 30244 (support of children). The Pay Manual treatment takes about 38 pages, including the glossary definition of "dependent." It is augmented by A.F.M. 177-373, volume IV, "Dependency Determinations" (15 June 1983), which is 83 pages long. The questions of relationship and dependency give new meaning to words like "byzantine" and "labyrinth." That has been the point of this essay on the law of allowances. The regulations are not beyond analysis, *see, e.g., Day v. United States*, 611 F.2d 1122 (5th Cir.1980), but having worked our way around the outlines of the BAQ entitlement, we now repudiate any claim of expertise.

6. Research of this aspect of this case was seriously impeded by the failure of the parties to include in the record extracts of the statutory and regulatory provisions that governed this trial. Amendments to pay statutes are routine,

The NCO from billeting could add only that, but for the false representations about where Sergeant Bost's wife lived, Sergeant Bost would have been required to reside on the base in a bachelor dormitory. Accordingly, in the monitor's view, Sergeant Bost would then have been entitled only to "partial" BAQ, a very modest sum. However, the defense established on cross-examination that the monitor also believed that some persons living in such dorms might still draw BAQ at the "with dependents" rate, e.g., those paying child support.

The NCO from travel accounting was no more helpful. His only role was to recount some contacts with Sergeant Bost when Bost's supervisor questioned the entitlement. The testimony shows furtiveness that suggests intent and falsity, but it did not establish the elements of the entitlement.

In sum, no one at trial examined the elements of the entitlement to BAQ at the "with dependents" rate. Accordingly, there is inadequate proof of the element of ownership to sustain a conviction for larceny, and the related findings must be set aside.[7]

### III. Effect of the Error

█ We have examined the record, and we found no other error at trial. The remaining error, assigned by appellant,[8] will be mooted by our remedial action on the sentence, to which we now turn. Because we have found the error discussed above, we must reassess the sentence to assure that no greater sentence is approved than would have been adjudged at trial, had the error not occurred. *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990); *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). *See generally, United States v. Waits*, 32 M.J. 274, 276–77 (C.M.A.1991). We are satisfied that we can do so.

Sergeant Bost was convicted both of the larceny that we have discussed and of a false statement made to induce payment of the BAQ. The defense had moved for dismissal of the false statement charge as multiplicious. The military judge deferred his ruling and returned to the matter before sentencing. With defense concurrence, the military judge found the two charges multiplicious for both findings and sentencing[9] and ordered them consolidated instead of dismissing one. He instructed that the maximum confinement that could

---

and amendments to the DoD Pay Manual and to Air Force manuals and regulations are frequent. For example, appellate defense counsel reported to us that the pertinent parts of the Pay Manual had been changed 24 times since a comprehensive revision in 1987! This Court does have statutes and regulations available for its research, but trial personnel ask too much of us if they expect that we will also piece together the historical mosaic of the law on which they rely. The more craftsmanlike practice, and the one which we expect, is to assure that the law governing such a case is captured at trial as it stood at the relevant time in extracts appended to the record as appellate exhibits. *Cf.* Fed.R.App.P. 28(f). The absence of testimony in this case about entitlement to BAQ and the absence of those extracts suggest that trial counsel completely overlooked the issue.

7. Having reached this conclusion, we are not required to examine the adequacy of the military judge's instruction on that element. On this element the military judge instructed simply, "The second element is: That the property belonged to the U.S. Air Force." The defense theory was not based on ownership, but was instead based on mistake. Thus, the defense did not ask a more detailed instruction and did not object to the one given. Any deficiency

might well have been waived. R.C.M. 920(c), (f).

8. Sergeant Bost notes that the staff judge advocate's recommendations related to the convening authority two findings of guilty, one on each of the two original charges separately, even though they were consolidated. He argues that the convening authority might have been less generous because the staff judge advocate's error made him look more culpable. Thus, his argument is very similar to our analysis of the need for relief from the sentence to cure the findings error. Our action cures the staff judge advocate's error, just as Congress intended. *See United States v. Komorous*, 33 M.J. 907 (A.F.C.M.R.1991); R.C.M. 1106(d)(6).

9. This is not an unusual result, and it makes us question why the prosecution pleaded both the false statement and the larceny. We recognize the contingencies of proof, but we are hard pressed to find any legitimate advantage in this case. Instead, the prosecution by so doing simply magnifies its burden. Given the complexity of proving the lack of entitlement to BAQ, the increased burden is not small.

be imposed was 5 years, the limit for either charge separately. The members sentenced Sergeant Bost to be discharged from the service with a bad-conduct discharge, to be confined for 1 year, to forfeit $500 of his pay per month for 12 months, and to be reduced to E–1.

One is tempted to find no possibility of error affecting the sentence, but there remains the possibility that, within the 5–year limit, the members adjudged a more severe sentence than they would otherwise have adjudged because they based it in part on their findings of fact about the larceny. Meanwhile, unraveling the mystery of BAQ entitlements has taken so long in this case that Sergeant Bost has served his confinement. Accordingly, we will remedy the findings error by relief from the forfeitures adjudged at trial.

So much of the findings as state the offense of false official statement in violation of Article 107 are affirmed. So much of the remaining findings as relate only to violation of Article 121 are set aside. Only so much of the sentence as provides for a bad-conduct discharge, confinement for 1 year, forfeiture of $400 of his pay per month for 12 months, and reduction to E–1 is affirmed. Having reassessed the sentence, we now consider the entire record, *United States v. Healy*, 26 M.J. 394 (C.M.A.1988), and we find the sentence as reassessed not inappropriate. Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988).

Senior Judge LEONARD and Judge RIVES concur.