**UNITED STATES**

v.

**Airman First Class David PABON, FR116–56–7005, United States Air Force.**

**ACM 29594.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 8 Aug. 1991.

Decided 2 June 1993.

Appellate Counsel for the Appellant: Captain Gilbert J. Andia, Jr. (argued), Colonel Jeffrey R. Owens, Colonel Terry J. Woodhouse, Major Alice M. Kottmyer, Major Mary C. Yastishock, and Major Richard W. Aldrich.

Appellate Counsel for the United States: Major John H. Kongable (argued), Colonel Richard L. Purdon, and Lieutenant Colonel Jeffery T. Infelise.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

Airman Pabon was convicted of stealing five parkas, using and possessing marijuana, and possessing cocaine with intent to distribute it.[1] He assigned several issues on appeal, the most difficult of which are a hearsay issue and an error in the calculation of the maximum punishment for the larceny. We address his assignments in chronological order below. We hold that the maximum punishment was incorrectly calculated, and we set aside the sentence.

A brief orientation to the facts of the case is enough to permit one to understand the issues. Agents of the Air Force Office of Special Investigations had joined civilian agencies in a drug offensive. An informant told the OSI agents that a member of the Air Force was trading parkas for drugs. The agents put an open-air drug marketplace under surveillance, and an undercover agent bought drugs there. Informants said that Airman Pabon also bought drugs there, and he was videotaped there by the OSI. Eventually the civilian dealers were arrested and convicted, and some of them testified at Airman Pabon's trial. They said that they sold him drugs and that he had exchanged five parkas for drugs. One of them said that Airman Pabon had agreed to get a parka for him.

### I. Consent to Produce Urine

Eventually Airman Pabon was summoned to the OSI's office to be interrogated. After about half an hour of questioning, Airman Pabon invoked his rights. Then the OSI agents asked for Airman Pabon's consent to produce a urine specimen for analysis, and he gave consent and later a sample. The prior assertion of the right not to be questioned does not invalidate the later consent. *United States v. Burns*, 33 M.J. 316, 319–20 (C.M.A.1991). The only question is whether the consent was given "freely and voluntarily." *Id.*; MIL.R.EVID. 314(e)(4). The military judge entered findings of fact on this motion.

1. Violations of Articles 121 and 112a, UCMJ, 10 U.S.C. §§ 921 and 912a (1988), respectively. He was sentenced to be discharged from the service with a dishonorable discharge, to be confined for 42 months, to pay a fine of $400 (with 4 months further confinement contingent upon failure to pay the fine), to forfeit all pay and allowances, and to be reduced to E–1.

They are supported by the record and not clearly erroneous, and we adopt them as our own. *United States v. Middleton*, 10 M.J. 123, 133 (C.M.A.1981). The military judge was correct when he denied the motion to suppress the specimen and the later results of the analysis.

■ The military judge applied the correct scope of review, the totality of the circumstances. MIL.R.EVID. 314(e)(4). We are unable to be certain that he applied the correct standard—clear and convincing evidence, MIL.R.EVID. 314(e)(5)—because neither the military judge nor the parties ever mentioned the pertinent rule of evidence. However, we review warrantless searches de novo. *See United States v. Figueroa*, 35 M.J. 54, 57 (C.M.A.1992) (Wiss, J., concurring), *cert. denied*, — U.S. —, 113 S.Ct. 1257, 122 L.Ed.2d 655 (1993); *United States v. Korda*, 36 M.J. 578, 581 (A.F.C.M.R.1992). Having reviewed the totality of the circumstances, we find, by clear and convincing evidence, that the consent was given freely and voluntarily. The specimen and the urinalysis results were properly admitted.

## II. Hearsay, Declaration Against Interest

Only one of the parkas was recovered and admitted in evidence. The prosecution called Johnson, one of the dealers, who said that he asked Airman Pabon on a Friday to get a parka for him. According to Johnson, Airman Pabon agreed to deliver it on a Monday. On that Monday, Johnson was arrested before the parka was delivered. A third person, Hill, delivered the parka to Johnson when Johnson was released. The trial counsel elicited two statements by

Hill, and they must be separately addressed. According to Johnson:

> Wit: Well, I had told Airman Pabon to get the jacket for me—I think this was on a Friday. He said he'd bring it on a Monday. I said, okay. But, it just so happened that on Monday, I got arrested—I got caught in a sting operation and I couldn't get it so this friend of mine, William Hill, also known as "Too Short," got the jacket for me. When I got outta jail Wednesday night, he had this jacket for me. *He said he had got it from Airman Pabon.*
>
> TC: *He said that was your jacket?*
>
> Wit: Yes, sir.

(Emphasis added.) Hill died before Airman Pabon's trial.

The defense objected to the Hill statements as hearsay.[2] The prosecution contended that the Hill statement would amount to a declaration against Hill's proprietary interest, figuratively as a statement disclaiming a right to possess the parka, and therefore admissible under MIL. R.EVID. 804(b)(3). The military judge overruled the objection on that basis.

Airman Pabon now argues that Hill's statements lack the credibility usually attributed to statements against interest because Hill's statement deflects suspicion away from Hill and inculpates Airman Pabon. However, the record does not suggest that it gave Hill any such benefit *when the statement was made* or that Hill was *ever* concerned about deflecting responsibility for the stolen parka away from himself.

■ We will address the statements in reverse order, first taking Hill's statement

---

**2.** We notice that this matter was handled in the first session of trial and without calling the witness, Johnson. The military judge was thus deciding a hearsay objection based on trial counsel's representations of his expectation of the testimony. Worse yet, the representation was paraphrastic, not definite. We find no error in this procedure in this case, but we caution military judges that hearsay objections should be decided based on the testimony of the witness or the text of the document involved. While it was perhaps inconvenient to produce Johnson both for the initial session and again, later, for testimony on the merits, the military judge could certainly have deferred this matter and heard Johnson's recitation of the contested hearsay in an Article 39(a) session during trial on the merits. *See generally United States v. Sutton*, 31 M.J. 11 (C.M.A.1990). He would then at least have had the benefit of making his ruling on the exact matter in controversy, and not on trial counsel's representation of expected testimony. The two are most often different, and there is a trap for the parties when the difference is so broad that the earlier decision does not square with the actual testimony. MIL.R.EVID. 103(a)(1).

that it was Johnson's jacket. In this instance we are persuaded by the government's argument: Hill's cession of a possessory right to Johnson was tantamount to a renunciation of any right Hill might have had. A reasonable person in Hill's position would have no reason to lie about the cession. In that respect the statement was against Hill's proprietary interest, and Hill would have perceived it that way.[3] *See United States v. Greer*, 33 M.J. 426, 429–30 (C.M.A.1991) (a penal interest case). The second "statement" (gotten by trial counsel's leading question) was properly admitted.

The other statement is different. Johnson's recollection that Hill said that Hill got the "jacket" from Airman Pabon is hardly the same sort of disclaimer. Stating the source of the "jacket" said nothing about Hill's proprietary interest in it, or lack thereof. *That* statement could have been stricken as hearsay, but the military judge overruled the objection.

 It is now well established that we review hearsay decisions to determine whether the military judge abused his discretion.[4] Appellate counsel for the parties have not helped us determine whether discretion was abused here,[5] but *United States v. Rosser*, 6 M.J. 267, 271 (C.M.A. 1979), gives us several factors to consider. There is no abuse where—

1. The decision was reached upon a rule of law, not subjectively;
2. After sufficient inquiry to uncover sufficient facts;
3. It was a reasonable decision; and
4. Consistent with the spirit of the law.

There is an abuse of discretion if either the reasons or ruling are clearly untenable and deprive a party of a substantial right, *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987), *quoting Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984). Similarly, there is an abuse if a decision is arbitrary, unreasonable, or clearly erroneous, *Travers*, 25 M.J. at 62–63, *quoting United States v. Glenn*, 473 F.2d 191 (D.C.Cir.1972), *as quoted in United States v. Yoakum*, 8 M.J. 763 (A.C.M.R.1980), *rev'd on other grounds*, 9 M.J. 417 (C.M.A. 1980); *United States v. Hawks*, 19 M.J. 736 (A.F.C.M.R.1984). Finally, there is also an abuse if the judge's decision was controlled by an error of law or without evidentiary support, *Travers*, 25 M.J. at 63, *quoting Renney v. Dobbs House, Inc.*, 275 S.C. 562, 274 S.E.2d 290 (1981).

 The military judge heard the arguments of counsel and explored the issue, and there is no suggestion of arbitrariness. The rule is quite simple in this case, which did not involve a statement that required external corroboration or penal interests, and we detect no misunderstanding of the law by the military judge. It is not unreasonable to view the statement "got it from

---

3. We have not overlooked the implication in the record that Hill paid for the "jacket" and expected Johnson to reimburse him. As best we can tell, Hill was simply accommodating his friend Johnson, not making a profit. Thus, we do not reach the interesting question whether a profit on the transaction dispels the adversity of disclaiming a proprietary interest.

4. *United States v. Powell*, 22 M.J. 141, 145 (C.M.A.1986); *United States v. Pacheco*, 36 M.J. 530, 534 (A.F.C.M.R.1992); *United States v. Ortiz*, 34 M.J. 831, 835 (A.F.C.M.R.1992); *United States v. Pearson*, 33 M.J. 913, 915 (A.F.C.M.R. 1991); *United States v. Warner*, 25 M.J. 738, 740 (A.F.C.M.R.1987), *pet. denied*, 27 M.J. 20 (C.M.A. 1988); *United States v. Bridges*, 24 M.J. 915, 919 (A.F.C.M.R.1987); *United States v. Cordero*, 21 M.J. 714, 715–16 (A.F.C.M.R.1985); *United States v. Crayton*, 17 M.J. 932, 934 (A.F.C.M.R. 1984), *pet. denied*, 19 M.J. 57 (C.M.A.1984). *See also United States v. Schoolfield*, 36 M.J. 545,

548 (A.C.M.R.1992); *United States v. Lyons*, 33 M.J. 543, 547 (A.C.M.R.1991), *aff'd*, 36 M.J. 183 (C.M.A.1992); *United States v. Williams*, 23 M.J. 792, 794 (A.C.M.R.1987), *aff'd*, 26 M.J. 487 (C.M.A.1988); *United States v. Whalen*, 15 M.J. 872, 877 (A.C.M.R.1983); *United States v. Martindale*, 36 M.J. 870, 877 (N.M.C.M.R.1993).

5. Appellate counsel should address standards and scope of review, waiver and relief from waiver, plain error, and prejudice and advocate their views on these and similarly "technical" aspects of errors urged on appeal. It is not enough for the appellant, for example, simply to urge that certain testimony was excludable, for trial judges have discretion on evidentiary rulings. To present a meritorious position, appellants must also show that the refusal to exclude was an abuse of discretion, for otherwise no relief is warranted, and the matter is essentially moot, for it raises an issue only of academic interest.

Airman Pabon" as part of the explanation Hill wanted to give Johnson to explain to Johnson that the "jacket" Hill was then surrendering to Johnson was the same one Johnson expected to get from Pabon. Thus, it was just part of the statement (paraphrasing now), "Here's your jacket." While others might view the matter differently, it appears that the military judge took some such view, and a mere difference of opinion is not an abuse of discretion and not enough to warrant relief. We find no abuse in this case.

Furthermore, the proof remains adequate in this case even if Hill's statements are ignored. Thus, no relief would be warranted even if they were improperly admitted. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1988).

## III. Effectiveness of Defense Counsel

The Sixth Amendment gives criminal defendants a right to the effective assistance of counsel. *See generally Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 M.J. 186 (C.M.A. 1987); *United States v. Barnard,* 32 M.J. 530 (A.F.C.M.R.1990), *pet. denied,* 33 M.J. 484 (C.M.A.1991). Reversal of a conviction for denial of such assistance requires that the appellant show that counsel's assistance was deficient and that the deficiency prejudiced the appellant. *Id.* There is no simple standard or checklist of factors for the examination of counsel's performance. Instead, one must determine whether the appellant received a fair trial, and whether counsel's performance was reasonable under the circumstances, with due deference. The range of acceptable performance is wide. *Washington,* 466 U.S. at 688–91, 104 S.Ct. at 2064–67.

Airman Pabon complains that his lawyer had inadequate time to prepare, failed to pursue alibi witnesses, failed to raise certain issues (including racial prejudice and command influence), and is now under investigation. The lawyer who represented Airman Pabon replied to his complaints in an affidavit, as has become typical. *See, e.g., United States v. Daffron,* 32 M.J. 912, 915–16 (A.F.C.M.R.1991), *pet. de-*

*nied,* 34 M.J. 75 (C.M.A.1991). Appellant did not rebut it, and he has not submitted any evidence on his claims of ineffectiveness other than the record. Accordingly, we will rely on the affidavit as well as the record when examining this issue. *Id.*

The defense counsel's explanations show that appellant received much more than that quality of representation that is required to assure a fair trial and a reliable, adversarial process. *Washington,* 466 U.S. at 688, 104 S.Ct. at 2064–65; *United States v. Cronic,* 466 U.S. 648, 653–57, 104 S.Ct. 2039, 2043–46, 80 L.Ed.2d 657 (1984). Nothing more is required, and no relief is warranted on this claim.

We have also considered Airman Pabon's claims about command influence and racial prejudice in the administration of military justice as assignments independent of the assignment of ineffective assistance. Airman Pabon has not met his burden of producing some evidence to put the matters into controversy. *United States v. Allen,* 33 M.J. 209, 212 (C.M.A.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992); *United States v. Bell,* 34 M.J. 937, 953–54 (A.F.C.M.R.1992), *pet. for review denied* (C.M.A.1992).

## IV. Sufficiency of the Evidence

"The test for [legal sufficiency] is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The test for factual sufficiency is "whether, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *Turner,* 25 M.J. at 325.

Much of Airman Pabon's argument on the sufficiency of the evidence is related to the credibility of the witnesses who testified against him. Some of them were the drug dealers who sold their stock at the open-air market, and they were clearly people acquainted with the criminal system. We are conscious of their lack of character

and their roots in the criminal milieu. *Compare United States v. Corbett,* 29 M.J. 253, 257–58 (C.M.A.1989) (Cox, J., concurring and dissenting) ("grave reservations"), *cert. denied,* 493 U.S. 978, 110 S.Ct. 506, 107 L.Ed.2d 508 (1989), *to United States v. Rounds,* 30 M.J. 76, 82 (C.M.A.1990), *cert. denied,* 498 U.S. 846, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). There were inconsistencies in their testimony. Nonetheless, taken together, the evidence in this case is adequate, both as a matter of law and as a matter of factual sufficiency.

One further aspect of this appeal warrants comment. Airman Pabon argues that there was insufficient proof of an actual loss to sustain the conviction of larceny. As the government points out, we have long held that "absence of inventories and/or proof of a shortage [are] not fatal to proof of corpus delicti in cases involving theft of government property." *United States v. McKinney,* 1 C.M.R. (A.F.) 625 (A.F.B.R.1949); *see also United States v. Blevins,* 34 C.M.R. 967 (A.F.B.R.1964), *pet. denied,* 15 U.S.C.M.A. 669, 35 C.M.R. 478 (1964).

■ The confusion on this point appears to us to arise from cases in which the old corroboration rule was still effective. It applied in military practice as early as the MANUAL FOR COURTS–MARTIAL, UNITED STATES, 1928, which included at § 114a the requirement that confessions be corroborated by "evidence of the corpus delicti." [6] In such cases there were ample opportunities for exaggeration of the proof requirement. For example, in *United States v. Chaput,* 2 U.S.C.M.A. 127, 7 C.M.R. 3, 4–5 (1953), the Court of Military Appeals wrote, "The crime of larceny necessarily includes the element that property is missing from the owner." *See* MANUAL FOR COURTS–MARTIAL, UNITED STATES, 1984 (hereafter MCM), Part IV, paragraph 46(b)(1).

It is true that some cases have been reversed for insufficiency of the evidence to prove loss. *E.g., United States v. Brown,* 3 U.S.C.M.A. 242, 11 C.M.R. 242 (1953). However, other decisions make it clear that proof of loss by inventory is not required. *United States v. Schaffrath,* 14 U.S.C.M.A. 114, 33 C.M.R. 326 (1963); *United States v. Mensch,* 13 U.S.C.M.A. 451, 32 C.M.R. 451 (1963); *United States v. Smith,* 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962); *United States v. Leal,* 7 U.S.C.M.A. 15, 21 C.M.R. 141 (1956); *United States v. Evans,* 1 U.S.C.M.A. 207, 2 C.M.R. 113 (1952); *United States v. Laningham,* 32 C.M.R. 519 (A.B.R.1962).

When we consider the evidence of larceny in this case, we conclude that it is sufficient as a matter of law, and we are ourselves convinced beyond a reasonable doubt that Airman Pabon was guilty as charged.

## V. Maximum Punishment for Larceny of Five Parkas

The larceny of the parkas was charged in a single specification that alleged that they were military property, that they were stolen at divers occasions, and that their total value was "more than $100.00." This pleading contributed to an incorrect determination of the maximum punishment.

■ The fact that the parkas were "military property" is an aggravating element, and so is the value of the property. *See* MCM, Part IV, paragraph 46(e)(1); *United States v. DiBello,* 17 M.J. 77, 80 n. 8 (C.M.A.1983). There is no contest on appeal that the parkas were "military property," for that is implied from the finding that they were stolen from the Air Force. *See generally United States v. Hemingway,* 36 M.J. 349 (C.M.A.1993); *United States v. Field,* 36 M.J. 697 (A.F.C.M.R. 1992); *United States v. Bellett,* 36 M.J. 563 (A.F.C.M.R.1992). There is also no dispute about the value assigned to each parka, $80.50. However, the aggravating factor for value was incorrectly applied. As a

---

**6.** *As quoted at United States v. McKinney,* 1 C.M.R. (A.F.) 625, 637 (A.F.B.R.1949). That rule later became the rule in *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). The requirement for corroboration has since been relaxed considerably. *See* MIL.R.EVID. 304(g); *United States v. Maio,* 34 M.J. 215 (C.M.A.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 138 (1992).

result, the military judge gave the members an inaccurate instruction on the maximum punishment.

A simple comparison of the possibilities makes the problem readily apparent. Had the prosecution known the dates on which each parka was stolen, it could have charged each theft separately. There could have been as many as five. Each one would have carried a maximum confinement of one year, and the longest possible total confinement would have been 5 years, as we note in the table below.

■ Not knowing the dates, the prosecution joined all the thefts in a single specification, alleging that the thefts were on divers occasions throughout the charged period. It then pleaded that the total value was over $100. The maximum confinement in that case was 10 years. Thus, the parties took five petty larcenies, rolled them together, and doubled the maximum punishment which might have been available even if the five had been separately pleaded:

| Theory | Value | Maximum Confinement for Each Specification | Total Maximum Confinement |
|---|---|---|---|
| Five separate thefts separately charged | $80.50 each | 1 year [7] | 5 years |
| One or more thefts of five parkas, at least two of which were stolen at the same time | over $100.00 | | 10 years [8] |

---

However, the proof does not show that all five or any combination of the parkas were stolen at one time.

■ When several things are stolen at the same or substantially the same time, the offense should be pleaded as one theft. MCM, Part IV, paragraph 46c(1)(h)(ii). However, the enhanced sentence that becomes available when the values are aggregated depends on proof that the right combination of things were stolen *all at once*. *United States v. Rupert*, 25 M.J. 531 (A.C.M.R.1987). The prosecution bears the burden of proving the aggravating aspect that the many items were stolen at substantially one time. *See DiBello*, 17 M.J. at 78–79 (duration in an absence case); *cf. United States v. Maynazarian*, 12 U.S.C.M.A. 484, 31 C.M.R. 70 (1961) (multi-

plicity for sentencing). The prosecution did not meet that burden. There is no evidence in the record from which one might conclude that the parkas were all taken at one time. The military judge's instruction on sentence was incorrect.

■ Furthermore, it was more incorrect than we have intimated to this point. When multiple larcenies not shown to have been committed at substantially one time are combined in one specification, the maximum punishment for that specification is determined by the value of the things shown to have been stolen in substantially one transaction. R.C.M. 1003(c)(1)(A)(i); *United States v. Davis*, 16 U.S.C.M.A. 207, 36 C.M.R. 363 (1966); *see United States v. English*, 25 M.J. 819, 821–22 (A.F.C.M.R.

---

7. MCM, Part IV, paragraph 46e(1)(a).

8. MCM, Part IV, paragraph 46e(1)(c).

1988), *rev'd other grounds*, 27 M.J. 400 (C.M.A.1988) (summary disposition) (bad checks under Article 123 and MCM Part IV, paragraph 49e(1)); *United States v. Poole*, 24 M.J. 539, 541–42 (A.C.M.R.1987), *aff'd*, 26 M.J. 272 (C.M.A.1988) (same). *But cf., United States v. Reed*, 26 M.J. 891, 894 n. 5 (A.F.C.M.R.1988) ("We emphasize ... that we view the rule in *English* and *Poole* as applicable solely to bad check specifications charged as violations of Article 123a, UCMJ, 10 U.S.C. § 923a."). In this case, the government did not show any single larceny to have involved more than one parka, and so the value of one parka ($80.50) sets the maximum confinement which could be adjudged at one year, not 10 years. Thus, when the military judge instructed that the maximum period of confinement for all the offenses of which Airman Pabon had been convicted was 29 years, he overstated it by 9 years.

However, the parties thought his instruction was correct, and there was no objection. A failure to object at trial waives instructional defects in the absence of plain error. R.C.M. 1005(f). Thus, we must determine whether it is plain error to waive an instruction that is so completely incorrect that it doubles the maximum punishment for the offense. The analysis is ad hoc, and the result depends on the circumstances. *United States v. Fisher,* 21 M.J. 327 (C.M.A.1986). Considering the factors in *Fisher*, we conclude that it was plain error to instruct the members that the maximum punishment included confinement for 29 years when, accurately calculated, it really included only 20 years. *Cf. United States v. Guevara*, 26 M.J. 779 (A.F.C.M.R.1988). Unlike *Guevara,* there is no suggestion in the record that anyone knew of the error, and, unlike *Fisher*, there was no pretrial agreement to save appellant from the mistake. The confinement adjudged in this case was considerable, and we cannot apportion it between that induced by the lawful maximum punishment and that induced by the 45 percent mistake.

Because we have found the error discussed above, we must determine whether we can reassess the sentence to assure that

no greater sentence is approved than would have been adjudged at trial, had the error not occurred. *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990); *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). *See generally United States v. Waits*, 32 M.J. 274, 276–77 (C.M.A.1991). We are not satisfied that we can do so. There are none of the signposts that sometimes suggest to us what sentence the trial court would have adjudged, and to attempt a reassessment would require plain guesswork. *See United States v. Felix*, 36 M.J. 903, 920–21 (A.F.C.M.R.1993) (James, J., dissenting).

The findings are correct in law and fact, and they are affirmed. The sentence is set aside. A rehearing on sentence may be ordered.

Senior Judge LEONARD and Judge JOHNSON concur.